DECISION AND JUDGMENT ENTRY
{¶ 1} Gregory B. McKnight appeals the trial court's judgment denying his postconviction relief petition without an evidentiary hearing. On appeal, McKnight contends that the trial court erred by adopting the state's findings of fact and conclusions of law. Because the state's proposed findings of fact and conclusions of law were sufficiently accurate in law and in fact, we disagree. McKnight next contends that he presented sufficient operative facts to warrant postconviction relief or, at a minimum, an evidentiary hearing. Because res judicata bars several of McKnight's claims for relief, and because the remaining claims lack substantive merit, we disagree. McKnight next contends that Ohio's *Page 2 
postconviction relief procedure does not afford an adequate corrective process. Because this court previously has held that Ohio's postconviction procedure affords an adequate process, we disagree. Finally, McKnight contends that cumulative errors throughout his trial deprived him of a fair trial. Because we could not find any errors, let alone cumulative errors, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On December 9, 2000, law enforcement officers discovered the body of Emily Murray, a missing Kenyon College student, wrapped in a rug located in the back bedroom of McKnight's trailer. Officers also discovered the skeletal remains of Gregory Julious, who had been missing since May 12, 2000, in a cistern located on McKnight's property. (State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, (McKnightI) provides additional, specific facts of McKnight's crimes.)
 {¶ 3} The Vinton County Grand Jury returned an indictment charging McKnight with, inter alia, aggravated murder, kidnapping, aggravated robbery, and murder. The indictment contained death penalty and firearm specifications.
 {¶ 4} In 2002, a jury convicted McKnight of aggravated murder, kidnapping, aggravated robbery, and murder. It then recommended that the court sentence him to death. The trial court accepted the jury's recommendation and sentenced McKnight to death. McKnight appealed the trial court's judgment to the Supreme Court of Ohio and raised thirty propositions of law. The court affirmed McKnight's conviction and death sentence. See McKnight I, supra. *Page 3 
 {¶ 5} On January 9, 2004, McKnight filed a postconviction relief petition and later filed two amendments. In his original petition and in the amendments, McKnight raised fifteen claims for relief: (1) the trial court erred by denying his motion for a change of venue due to pretrial publicity; (2) trial counsel was ineffective for failing to present available evidence in support of the motion to change venue; (3) he did not receive a fair trial due to racial bias; (4) his death sentence is disproportionate to a similar case in Vinton County, State v.McMillen, Vinton C.P. No. 01CR7229; (5) members of the jury engaged in misconduct by failing to follow the trial court's instructions that the jury "may not consider the nature and circumstances of the crime as an aggravating circumstance"; (6) the death penalty scheme does not work because jurors fail to understand the law; (7) the trial court erroneously admitted crime scene photographs of the victim; (8) the search warrant that led to the discovery of evidence used to convict McKnight was based upon false information; (9) ineffective assistance of counsel during the penalty phase because defense counsel failed to present mitigating evidence that McKnight's father abandoned him; (10) the cumulative effect of the above errors were prejudicial and deprived him of a fair trial; (11) the death penalty as administered by lethal injection constitutes cruel and unusual punishment; (12) ineffective assistance of counsel due to defense counsel's failure to investigate and present available evidence in support of the motion to suppress; (13) the state interfered with his ability to investigate and present his case on the motion to suppress evidence by failing to provide Deputy Kight's statement to the defense until after the motion to *Page 4 
suppress had been filed and denied; (14) ineffective assistance of counsel due to trial counsel's failure to argue for a change of venue based upon the racial composition of Vinton County; and (15) ineffective assistance of counsel due to trial counsel's failure to reasonably investigate and present relevant mitigating evidence.
 {¶ 6} On March 10, 2006, the trial court dismissed McKnight's petition without holding an evidentiary hearing. The court determined that res judicata barred McKnight's first, second, sixth, seventh, eighth, twelfth, and thirteenth grounds for relief and that he failed to produce sufficient credible evidence to establish substantive grounds for relief as to his remaining claims. McKnight timely appealed the trial court's decision. We subsequently dismissed his appeal for lack of a final appealable order due to the trial court's failure to enter sufficient findings of fact and conclusions of law. See State v. McKnight, Vinton App. No. 06CA645, 2006-Ohio-7104.
 {¶ 7} On remand, the state submitted proposed findings of fact and conclusions of law. The trial court adopted them and dismissed McKnight's petition. The court found that res judicata barred his first and second claims for relief. The court found no credible evidence to support his third claim, in which he claimed racism affected the sentencing process. The court found no credible evidence to support his fourth claim, in which he asserted his sentence was disproportionate with State v. McMillen. The court determined that McKnight and McMillen were not similarly situated. The court found that McKnight failed to offer credible evidence to establish his fifth claim, in which he contended that members of the *Page 5 
jury engaged in misconduct by failing to follow the court's instructions. The court determined that McKnight's affidavit from an assistant state public defender that restated what two jurors told her was not admissible. The court also found McKnight's sixth claim, in which he argued that the jurors did not follow the instructions or that the instructions provided failed to give jurors insufficient guidance. The court determined that: (1) res judicata barred any claim that the instructions were defective; (2) the assistant state public defender's affidavit was not admissible; and (3) a linguistic professor's 1994 affidavit did not constitute sufficient credible evidence to support McKnight's claim. The court found res judicata barred his seventh claim, in which he claimed that the trial court erred by admitting gruesome photographs during his trial. The court noted that the Supreme Court of Ohio expressly considered and rejected this claim in his direct appeal. The court found that res judicata barred McKnight's eighth claim, in which he asserted that the trial court should have granted his motion to suppress evidence. The trial court determined that McKnight failed to present sufficient credible evidence regarding his ninth claim for relief, in which he argued that his trial counsel was ineffective for failing to "investigate, prepare and present mitigating evidence regarding his character, history, and background — namely the abandonment of McKnight by his father." The trial court found that McKnight's trial counsel was not deficient because counsel made a strategic decision. The court rejected McKnight's tenth claim for relief, in which he contended that the cumulative effect of the alleged errors mandated a new trial. The trial court also rejected his eleventh claim for relief, in which he argued he *Page 6 
was that the death penalty administered by lethal injection constitutes cruel and unusual punishment. The court found that because McKnight's eleventh claim did not raise an issue relating to the propriety of the trial, postconviction relief was not the proper procedural vehicle to challenge the constitutionality of the death penalty by lethal injection. The court also determined that no substantive grounds for relief existed. The court rejected McKnight's thirteenth claim for relief, in which he claimed that trial counsel was ineffective for failing to investigate and call Deputy Kight to testify in support of his motion to suppress. The court also rejected his fourteenth claim for relief, in which he asserted that trial counsel was ineffective for failing to request a change of venue due to racial bias in the community. The court noted that McKnight did not challenge any of the seated jurors for cause due to racial issues and that he failed to offer anything to show that racial bias affected his particular case. The court also rejected McKnight's fifteenth claim, in which he claimed that trial counsel was ineffective for failing to investigate his cultural heritage and present it during the mitigation phase. The court found that his cultural heritage did not excuse, justify, or mitigate the aggravating circumstance of his conduct.
 {¶ 8} McKnight appeals the court's judgment and asserts the following assignments of error: "I. The trial court violated Appellant's right to due process in his postconviction proceedings when it adopted fully the State's recommended findings of fact and conclusions of law, failing to independently determine the issues presented." "II. The trial court erred by dismissing Appellant's postconviction petition, where he presented sufficient operative facts and *Page 7 
supporting exhibits to merit at minimum discovery and an evidentiary hearing." "III. Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the Fourteenth Amendment." "IV. Considered together, the cumulative errors set forth in Appellant's substantive grounds for relief merit reversal or remand for a proper postconviction process."
 II. {¶ 9} In his first assignment of error, McKnight contends that the trial court violated his due process rights during the postconviction proceeding by adopting the state's recommended findings of fact and conclusions of law and by failing to independently determine the issues. "We review questions of law de novo." Cuyahoga Cty. Bd. of Commrs. v.State, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 23.
 {¶ 10} When a trial court denies a postconviction relief petition, R.C. 2953.21(G) requires the trial court to make and file findings of fact and conclusions of law setting forth its findings on each issue presented and a substantive basis for its disposition of each claim for relief advanced in the petition. See, e.g., State v. Lester (1975),41 Ohio St.2d 51. The purpose of requiring findings of fact and conclusions of law is to apprise the petitioner of the basis for the court's disposition and to facilitate meaningful appellate review. See, e.g.,State ex rel. Carrion v. Harris (1988), 40 Ohio St.3d 19.
 {¶ 11} When a party's proposed findings of fact and conclusions of law are accurate in law and in fact, nothing prohibits a trial court from adopting that *Page 8 
party's proposed findings of fact and conclusions of law in a postconviction proceeding. See State v. Williams, Cuyahoga App. No. 85180, 2005-Ohio-3023, ¶ 35, citing State v. Combs (1994),100 Ohio App.3d 90. "In the absence of demonstrated prejudice, it is not erroneous for the trial court to adopt, in verbatim form, findings of fact and conclusions of law which are submitted by the state." State v.Thomas, Cuyahoga App. No. 87666, 2006-Ohio-6588, ¶ 15, citing State v.Powell (1993), 90 Ohio App.3d 260, 263; State v. Sowell (1991),73 Ohio App.3d 672, 676; State v. Peek (Apr. 18, 1996), Cuyahoga App. No. 69546. A trial court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law. State v.Jester, Cuyahoga App. No. 83520, 2004-Ohio-3611, at ¶ 16; State v.Combs (1994), 100 Ohio App.3d 90, 110. See, also, Thomas, supra, ¶ 15.
 {¶ 12} Here, the state's proposed findings of fact and conclusions of law were sufficiently accurate. Moreover, we find no evidence that the trial court failed to review and consider McKnight's petition in its entirety. Therefore, we find that McKnight failed to demonstrate prejudice resulting from the trial court's adoption of the state's proposed findings of fact and conclusions of law. Consequently, the trial court did not violate McKnight's due process rights.
 {¶ 13} Accordingly, we overrule McKnight's first assignment of error.
 III. {¶ 14} In his second assignment of error, McKnight contends that the trial court improperly dismissed his postconviction relief petition without holding an *Page 9 
evidentiary hearing. He asserts that he presented sufficient operative facts to support his grounds for relief. McKnight further claims that the trial court wrongly concluded that res judicata barred some of his claims for relief. He asserts that he could not have fully litigated the issues on appeal because he did not have the ability to present all of the evidence supporting the claims.
 A. {¶ 15} When reviewing a trial court's decision dismissing a petition for postconviction relief without an evidentiary hearing, this court applies the abuse of discretion standard. State v. Gondor,112 Ohio St.3d 377, 2006-Ohio-6679, ¶¶ 51-52. The words "abuse of discretion" mean that the court has an unreasonable, arbitrary or unconscionable attitude. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130. In addition, when an appellate court applies the "abuse of discretion" standard, it may not substitute its judgment for that of the trial court. See, e.g., State v. Herring (2002), 94 Ohio St.3d 246, 255.
 B. {¶ 16} The postconviction relief statute, R.C. 2953.21, provides a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution. R.C. 2953.21(A)(1); State v. Hatton (Aug. 4, 2000), Pickaway App. No. 00CA10. In order to prevail on a postconviction relief petition, the petitioner must establish that he has suffered an infringement or deprivation of his constitutional rights. R.C. 2953.21 (A)(1); State v.Calhoun (1999), 86 Ohio St.3d 279, 283. *Page 10 
 {¶ 17} The filing of a postconviction relief petition does not automatically entitle the petitioner to an evidentiary hearing.Calhoun at 282, citing State v. Cole (1982), 2 Ohio St.3d 112. The trial court first must determine whether substantive grounds for relief exist. R.C. 2953.21(C); Calhoun at 282-283. Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights. Calhoun at 282-283. In determining whether substantive grounds for relief exist, the trial court must examine the petition, any supporting affidavits, any documentary evidence, and all the files and records from the case. R.C.2953.21(C). Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice."Calhoun at 283.
 {¶ 18} The postconviction statute is not intended, however, to permit "a full blown retrial of the [petitioner's] case." State v. Robison
(June 19, 1989), Pickaway App. No. 88 CA 15. Rather, "adjudication is confined solely to claimed constitutional violations." Id. "[C]laimed procedural or other errors at trial not involving constitutional rights are not relevant or subject to review." Id.; see, also, State v.Akers (Feb. 2, 1998), Lawrence App. No. 97 CA 22.
 {¶ 19} Additionally, postconviction relief is not warranted for claims that the petitioner raised or could have raised on direct appeal.State v. Reynolds (1997), 79 Ohio St.3d 158, 161. Res judicata bars any claim that the petitioner raised or could have raised on direct appeal. See, e.g., State v. Lentz (1994), 70 Ohio St.3d 527; State v. Perry
(1967), 10 Ohio St.2d 175, syllabus. *Page 11 
 {¶ 20} A defendant may overcome the res judicata bar by presenting competent, relevant, and material evidence outside the record. State v.Lawson (1995), 103 Ohio App.3d 307, 315, citing State v. Smith (1985),17 Ohio St.3d 98, 101, fn. 1. However, the evidence presented outside the record "must meet some threshold standard of cogency; otherwise it would be too easy to defeat the res judicata doctrine by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis[.]" Id., citing State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811; see, also, State v. Hand, Delaware App. No. 05CAA060040, 2006-Ohio-2028. Furthermore, this evidence must have been unavailable to the petitioner at the time of trial or his direct appeal. See State v. Lewis (Dec. 3, 1998), Cuyahoga App. No. 73736 (noting that while the petitioner attached evidence dehors the record in support of his claims for relief, he made no claim that the evidence was unavailable to him at the time of his direct appeal). If the evidence existed at the time of trial, then a defendant must submit it at that time. See Lawson at 315 (stating that a petitioner may not "repackage" evidence already in the trial court record to avoid res judicata bar); State v. Cook (Dec. 29, 1995), Hamilton App. No. C-950090; see, also, State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, ¶ 17.
 {¶ 21} Furthermore, when a defendant, "represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, *Page 12 
res judicata is a proper basis for dismissing defendant's petition for postconviction relief." State v. Cole (1982), 2 Ohio St.3d 112, syllabus.
 C. {¶ 22} With the foregoing principles in mind, we turn to McKnight's claims for relief to determine whether the trial court abused its discretion by determining that McKnight failed to present substantive grounds for relief or that res judicata barred the claims.
 1. {¶ 23} McKnight contends in his first claim for relief that the trial court erred at his trial by denying his motion for change of venue. On this appeal, he claims that the trial court, when considering his petition, improperly determined that res judicata barred this claim. McKnight asserts that res judicata does not bar the claim because he supported it with newspaper articles that were not part of the trial court record.
 {¶ 24} The state asserts that res judicata bars the claim and observed that the Supreme Court of Ohio considered this argument on direct appeal. The state further contends that McKnight's first claim lacks substantive merit. The state argues that defense counsel had ample opportunity to voir dire the prospective jurors and that the jurors ultimately seated either stated that they did not know much about the case (despite the pretrial publicity), or that they could decide the case based solely upon the facts presented at trial. The state further notes that defense counsel did not attempt to challenge for cause any of the seated jurors. The state also observes that defense attorney Toy stated in his deposition that *Page 13 
counsel decided not to attach articles to the motion to change venue, because there was no dispute "that everybody knew that this was a pretrial publicity problem, and that about 95 percent or more were aware of the situation."
 {¶ 25} Initially, we agree with the state that res judicata bars McKnight's first claim for relief. He explicitly argued on direct appeal that the trial court erred by overruling his motion to change venue. And the court found that McKnight's argument lacks merit.
 {¶ 26} Additionally, McKnight's claim that the newly submitted newspaper articles defeat the res judicata bar is meritless. Nothing shows that the articles were unavailable to defense counsel at the time of trial and that counsel, therefore, could not have submitted them along with the motion. See Campbell, at ¶ 18 (noting that petitioner submitted over fifty newspaper articles published about the crime before his trial in attempt to overcome res judicata bar); State v. Palmer
(Oct. 20, 1999), Belmont App. No. 96BA70 (concluding that res judicata barred pretrial publicity claim when newspaper articles were available at time of trial). Because McKnight fails to show that the evidence was unavailable at the time of trial, res judicata bars this claim.
 {¶ 27} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's first claim for relief.
 2. {¶ 28} In his second claim for relief, McKnight contends that his defense attorneys rendered ineffective assistance of counsel by failing to present the available media reports in support of the motion to change venue. He asserts *Page 14 
that the evidence would have demonstrated pervasive publicity and prejudicial content.
 {¶ 29} The state asserts that because McKnight could have raised this claim on direct appeal, res judicata bars it. The state also argues that the claim fails on the merits. The state contends: "The test to be used to determine if a change of venue is appropriate is not how many newspaper articles were or could have been attached to a motion. McKnight's trial counsel raised the issue of pretrial publicity and participated in a careful and searching voir dire process to select a fair and impartial jury. Counsel was not deficient and McKnight suffered no prejudice. An impartial jury was seated, and McKnight cannot establish prejudice."
 {¶ 30} Here, we find that McKnight could have raised this ineffective assistance of counsel claim on direct appeal. "A claim of ineffective assistance of counsel presented in a postconviction petition may be dismissed under the doctrine of res judicata when the petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and the issue could fairly have been determined without evidence dehors the record."State v. Sowell, supra, citing State v. Cole (1982), 2 Ohio St.3d 112. In this case, McKnight had different counsel on appeal than he did at trial. Also, his ineffective assistance of counsel claim could fairly have been determined without evidence dehors the record. Therefore, res judicata bars this claim.
 {¶ 31} Furthermore, McKnight's second claim fails on the merits. As one court has noted, counsel's failure to include every piece of publicity surrounding a case *Page 15 
does not amount to ineffective assistance of counsel when the trial court is well aware of the level of publicity. State v. Moreland (Jan. 7, 2000), Montgomery App. No. 17557. Here, the trial court was well aware of the extent of pretrial publicity. Thus, counsel's failure to document the pretrial publicity through the use of newspaper articles could not have prejudiced McKnight.
 {¶ 32} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's second claim for relief.
 3. {¶ 33} In his third claim for relief, McKnight contends that due to the overwhelmingly white population in Vinton County, he did not receive a fair trial, due process, or a reliable sentencing hearing.
 {¶ 34} We again find that res judicata bars McKnight's third claim for relief. He does not present any evidence in support of this claim that was unavailable at the time of his trial or his direct appeal. Instead, he relies upon United States Census Bureau population statistics and prospective jurors' responses during voir dire. Because these pieces of evidence were available to McKnight at the time of his direct appeal, the evidence does not constitute evidence dehors the record. Therefore, this evidence does not overcome the res judicata bar.
 {¶ 35} Moreover, McKnight's third claim for relief lacks substantive merit. To the extent he asserts that his jury did not contain a representative cross-section of the community, we reject this claim. "[I]t is not necessary that every jury contain representatives of all economic, social, religious, racial, political, and geographical groups in the community." State v. Johnson (1972), *Page 16 31 Ohio St.2d 106, 114. As the Supreme Court of Ohio explained in State v.Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶¶ 64-65:
 "The Sixth Amendment to the United States Constitution does not require that petit juries `mirror the community and reflect the various distinctive groups in the population.' Taylor v. Louisiana (1975), 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690. However, the method employed for selecting the groups from which juries are drawn `must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.' Id.
 In order to establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement, a defendant must demonstrate `(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' Duren v. Missouri (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579. Accord State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus."
 {¶ 36} Here, McKnight has not shown that black citizens in Vinton County are systematically excluded from the jury pool. Therefore, any claim based upon his Sixth Amendment right to a jury composed of a fair cross-section of the community is meritless.
 {¶ 37} Moreover, McKnight has not produced any evidence showing that racial bias affected the outcome of the trial or the sentencing hearing. Ohio courts have rejected arguments of racial bias when the petitioner fails to show that racial bias affected the sentencing process in his particular case. State v. Sowell (1988), 39 Ohio St.3d 322, 336, certiorari denied (1989), 490 U.S. 1028; State v. Zuern (1987),32 Ohio St.3d 56, certiorari denied (1988), 484 U.S. 1047; see, also,McCleskey v. Kemp (1987), 481 U.S. 279. The Supreme Court of Ohio has *Page 17 
specifically rejected the argument that Ohio's statutory scheme for imposing the death penalty is unconstitutional because the death penalty is more often imposed on those who kill white victims. State v.Steffen (1987), 31 Ohio St.3d 111, 124-125, certiorari denied (1988),485 U.S. 916.
 {¶ 38} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's third claim for relief.
 4. {¶ 39} In his fourth claim for relief, McKnight contends that his death sentence is disproportionate to another Vinton County case,State v. McMillen. He claims that he received disparate treatment based upon race.
 {¶ 40} We again find that res judicata bars McKnight's fourth claim for relief. McKnight has failed to show that he was unable to raise this issue on direct appeal. He does not rely upon any evidence that was unavailable at the time of his direct appeal to support this claim. McKnight could have argued on direct appeal that his death sentence was disproportionate to McMillen simply by referring to that case. Additionally, he could have argued on direct appeal that racial considerations affected the prosecutor's decision to seek the death penalty. He does not point to any evidence dehors the record in support of this claim and does not explain why he could not have made this argument on direct appeal.
 {¶ 41} In any event, McKnight's fourth claim for relief lacks merit. First, we note that the Ohio Supreme Court determined that McKnight's death sentence is proportionate to death sentences approved in other similar cases. See McKnight I, *Page 18 
at ¶ 334. Second, McMillen involved a negotiated plea agreement and a jointly recommended sentence. McKnight's death sentence obviously was not negotiated or jointly recommended. Thus, the facts of the two cases are not the same. Because the facts of the two cases are not the same, a disparate sentencing argument is not appropriate.
 {¶ 42} To the extent McKnight alleges that Ohio's death penalty scheme is unconstitutional because it permits unbridled prosecutorial discretion, we reject this claim. The court considered and rejected this exact claim in State v. Jenkins (1984), 15 Ohio St.3d 164, 169-170, citing Gregg v. Georgia (1976), 428 U.S. 153, 96 S.Ct. 2909; see, also,State v. Gerish (Apr. 22, 1999), Mahoning App. No. 92 C.A. 85.
 {¶ 43} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's fourth claim for relief.
 5. {¶ 44} In his fifth claim for relief, McKnight contends that his rights to a fair trial, due process, and a reliable sentence were violated because members of the jury engaged in misconduct by failing to follow the trial court's instructions. McKnight alleges that the jury failed to follow the court's instruction that the jurors "may not consider the nature and circumstances of the crime as an aggravating circumstance."
 {¶ 45} To support his claim, McKnight submitted an affidavit from Assistant State Public Defender, Kathryn Sandford, who was present at interviews with two of McKnight's jurors following the trial. Attorney Sandford stated that one of the *Page 19 
jurors asserted that she voted for death because of the "brutality" of the crimes and because of the blood evidence. Attorney Sandford stated that the juror advised, "[T]he only factor that could have weighed in favor of a life sentence was if the defense had proven in any way that McKnight was not responsible for the crimes." McKnight asserts that the juror's comments shows that she failed to follow the trial court's instructions.
 {¶ 46} McKnight also refers to Attorney Sandford's statements concerning her interview with another juror. This juror stated that the evidence of McKnight's guilt was "too strong to vote for life." McKnight claims that the juror was looking for remorse. McKnight argues that the jurors' statements shows that they considered factors that cannot be used to support a death sentence and improperly placed the burden on McKnight to prove his innocence.
 {¶ 47} McKnight claims that the jurors' statements are admissible, despite the aliunde rule, in light of the Supreme Court of Ohio's administrative decision permitting the media to record the jury's deliberations during the trial and mitigation phases in State v.Ducic, Cuyahoga C.P. No. CR-440378. See State v. Drummond, Mahoning App. No. 05MA197, 2006-Ohio-7078, ¶ 90. He contends that the Ducic decision undermined the stated purpose of Evid.R. 606(B). McKnight asserts, "With the Ohio Supreme Court's willingness to make public the sacrosanct deliberations in a capital case, applying the aliunde rule to McKnight's case becomes arbitrary." *Page 20 
 {¶ 48} Evidence Rule 606(B) prohibits a party from using a juror's statement to impeach a verdict. See State v. Robb (2000),88 Ohio St.3d 59, 79. Specifically, Evid.R. 606(B) provides:
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.
 {¶ 49} Thus, Evid.R. 606(B) prohibits both a juror's statements and hearsay testimony concerning the juror's statements provided in an affidavit unless evidence aliunde exists; that is, evidence that is extraneous and independent, based upon the firsthand knowledge of one who is not a juror. State v. Hessler (2000), 90 Ohio St.3d 108, 123;State v. Schiebel(1990), 55 Ohio St.3d 71, 75; State v. Herring, Mahoning App. No. 03MA12, 2004-Ohio-5357. "[T]he information [alleging misconduct] must be from a source which possesses firsthand knowledge of the improper conduct." Schiebel at 75; see, also, Hessler at 123. The rule is vital not only to protect jurors from harassment by defeated parties, but to ensure finality of verdicts and preserve the "`sanctity of the jury room and the deliberations therein.'" Wittman v. Akron, Summit App. No. 21375, 2003-Ohio-5617, ¶ 10, quoting Hessler at 123. *Page 21 
 {¶ 50} In Hessler, the court held that Evid.R. 606(B) prohibited the trial court from considering a juror's and an alternate juror's affidavits when ruling on a motion for a new trial or an evidentiary hearing. The affidavits stated that the juror signed the verdict voting for death only to avoid continued harassment by other jurors. The court determined that because the affidavits offered internal evidence of the jury's deliberations in order to impeach the sentencing recommendations, the trial court correctly overruled the motion for a new trial or an evidentiary hearing.
 {¶ 51} Here, McKnight offered an affidavit containing Attorney Sandford's recollection of juror interviews attesting to their deliberations during the sentencing phase of McKnight's trial. The statements constitute internal evidence of the jury's deliberations, which the aliunde rule flatly prohibits. Therefore, the trial court properly concluded that Evid.R. 606(B) prohibited it from considering the affidavit when evaluating McKnight's postconviction petition. Moreover, Sandford's affidavit attesting to what the jurors stated is complete hearsay. See, e.g., State v. Ahmed, Belmont App. No. 05-BE-15, 2006-Ohio-7069, ¶ 141.
 {¶ 52} McKnight's contention that the Supreme Court of Ohio's decision to allow a national media organization into the jury room during trial and penalty phase deliberations means that the aliunde rule no longer has any viability is without merit. The Supreme Court of Ohio has not explicitly overruled the aliunde rule. Moreover, in Drummond, supra, the court rejected this same argument. The court stated, "Appellant concludes that the Supreme Court must thus no longer believe jury deliberations are subject to sanctity. However, this court cannot *Page 22 
jump to such a conclusion and cannot override Evid.R. 606(B) based upon some Supreme Court administrative order to allow media into deliberations. The rule is still applicable to protect the finality of verdicts." Id. at ¶ 90. We agree with the conclusion inDrummond.
 {¶ 53} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's fifth claim for relief.
 6. {¶ 54} In his sixth claim for relief, McKnight contends that the death penalty scheme does not work. He claims that members of his jury either misunderstood or completely disregarded the court's instructions. McKnight alleges that the jurors failed to follow the court's instructions to weigh the aggravating circumstances against mitigating factors, and that they did not understand the concept of "aggravating circumstances." To support this claim, McKnight submitted the affidavit of Ohio State University Linguistics Professor Michael L. Geis. Professor Geis opines that capital jury instructions are overly broad.
 {¶ 55} The state asserts that res judicata bars the argument to the extent McKnight challenges the jury instructions. The state further contends that Professor Geis's affidavit is not sufficient, credible evidence to support his claim for relief.
 {¶ 56} McKnight is not the first criminal defendant to rely upon Professor Geis's affidavit in a postconviction proceeding. Other courts have ruled that Geis's affidavit does not overcome the res judicata bar. See Ahmed at ¶ 144; State v. Phillips, Summit App. No. 20692, 2002-Ohio-823 (stating that "Dr. Geis' affidavit *Page 23 
[did] not immunize [the defendant] from the operation of res judicata, because the linguistic arguments made by Mr. Geis in his affidavit could have been argued on direct appeal; therefore, the affidavit is only of marginal significance in determining whether the jury instructions were erroneous, misleading, or confusing"); State v. Hughbanks, Hamilton App. No. C010372, 2003-Ohio-187, ¶ 18 (stating that Geis's affidavit "presented `essentially * * * [a] notarized argument that could have been advanced at trial or on appeal" and therefore did not constitute outside evidence that precluded dismissal of the claim under the doctrine of res judicata); State v. Goff (Mar. 5, 2001), Clinton App. No. CA2000-05-14 (stating that Professor Geis's affidavit did not constitute sufficient evidence dehors the record to overcome res judicata bar); State v. Wilson (June 24, 1998), Lorain App. No. 97CA6683; see, also, See State v. Williams (June 22, 1998), Butler App. No. CA97-08-162; State v. Waddy (June 10, 1997), Franklin App. No. 96APA07-863 (both rejecting similar arguments based upon Professor Geis's affidavit). We likewise find that Professor Geis's affidavit does not overcome the res judicata bar.
 {¶ 57} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's sixth claim for relief.
 7. {¶ 58} In his seventh claim for relief, McKnight contends that the trial court erred by admitting crime scene and autopsy photographs. He asserts that the prejudicial impact of the photographs far outweighed any probative value. To support this claim, McKnight relied upon Attorney Sandford's affidavit in which *Page 24 
she recounted her recollection of interviews with the jurors following McKnight's trial. One juror related to Attorney Sandford that the photos were "gross," that "the prosecution used too many photos," and that "[t]he photos of the victim * * * seemed to seal McKnight's conviction and death sentence." He argues that res judicata does not bar this claim because the juror's statement constitutes evidence outside the record that was unavailable to use on direct appeal.
 {¶ 59} Because the juror statement is barred under the aliunde rule, which we discussed, supra, we find that McKnight lacks evidence dehors the record to support this claim. Thus, res judicata bars McKnight's seventh claim for relief. Furthermore, the Supreme Court of Ohio directly addressed McKnight's claim that the trial court erred by admitting the crime scene and autopsy photographs. The court rejected McKnight's argument that the admission was an error. See McKnight I at ¶¶ 140-145.
 {¶ 60} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's seventh claim for relief.
 8. {¶ 61} In his eighth claim for relief, McKnight contends that he suffered a violation of his Fourth Amendment right against unreasonable searches. Specifically, he claims that law enforcement officers obtained a search warrant for his property based upon false information. To support this claim, he submitted Deputy Kight's affidavit in which he averred that he performed the activities that Corporal Boyer recounted in the search warrant affidavit. *Page 25 
 {¶ 62} We again find that res judicata bars McKnight's eighth claim for relief. The Supreme Court of Ohio explicitly considered and rejected McKnight's argument regarding the falsity of the search warrant affidavit on direct appeal. Id. at ¶¶ 30-42.
 {¶ 63} Moreover, even if res judicata does not bar McKnight's eighth claim for relief, the claim lacks merit. "[E]vidence obtained as a result of the execution of a search warrant must be excluded if the warrant was based upon an affidavit containing deliberate misstatements of fact only if those misstatements are essential to the determination of probable cause to search. * * * [I]f the material that is the subject of the alleged falsity is set aside and `what is left is sufficient to sustain probable cause, the inaccuracies are irrelevant.'" State v.Hill (Dec. 2, 1993), Cuyahoga App. No. 65145, quoting Franks v.Delaware (1978), 438 U.S. 154, 171, fn. 8. Thus, even if an affidavit filed in support of a search warrant contains false statements that were made intentionally or recklessly, the resulting warrant remains valid; unless, with the affidavit's false material excluded, the affidavit's remaining content is insufficient to establish probable cause.
 {¶ 64} Here, even if the allegedly false information is omitted, the search warrant affidavit still established probable cause to search McKnight's property. Who actually performed the activities listed in the search warrant affidavit is not material. The essential facts listed remain true: (1) Emily was listed as an endangered missing person; (2) a vehicle with New York license plates was observed at McKnight's residence; and (3) the license plate number for the vehicle was checked through a computer system and returned as an alert for *Page 26 
Emily as a missing and endangered person. Cf. State v. Taylor, Hamilton App. No. C-070026, 2007-Ohio-7066 (concluding that search warrant affidavit was not materially false and subject to suppression when affidavit incorrectly stated which of two officers actually spoke to confidential informant when material facts remained true).
 {¶ 65} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's eighth claim for relief.
 9. {¶ 66} In his ninth claim for relief, McKnight contends that trial counsel rendered ineffective assistance of counsel by failing "to present available, relevant, and compelling mitigating evidence to the jury." He claims that trial counsel failed to investigate, prepare, and present mitigating evidence regarding his character, history, and background, and in particular, his father's abandonment. McKnight alleges that the evidence would have humanized him and provided the jurors with reasons to spare his life. To support this claim, McKnight relies upon affidavits from his mother, his maternal aunt, and a family friend in which they asserted that McKnight's feelings of paternal abandonment and the lack of a father-figure in his life were dominant themes in his life. He also refers to lead defense counsel's deposition in which he stated that he did not consider parental abandonment as a mitigating factor.
 {¶ 67} The state contends that trial counsel investigated McKnight's background and decided not to present the evidence. The state points to a discussion held on the record where lead defense counsel related his thought that calling certain *Page 27 
mitigation witnesses would open the door to McKnight's prior juvenile murder conviction. The state thus asserts that counsel was not deficient but instead made a strategic decision. The state further argues that McKnight did not suffer prejudice.
 {¶ 68} "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith (2003),539 U.S. 510, 521, citing Strickland v. Washington (1984), 466 U.S. 668,687; see, also, State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 69} "To establish deficient performance, a petitioner must demonstrate that counsel's representation `fell below an objective standard of reasonableness.'" Wiggins at 521, quotingStrickland at 688. The Supreme Court of the United States has refrained from "articulating] specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that `[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Id., quoting Strickland at 688. Thus, debatable trial tactics and strategies do not constitute ineffective assistance of counsel. See, e.g., State v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied (1980), 449 U.S. 879.
 {¶ 70} Moreover, when addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v.Phillips (1995), 74 Ohio St.3d 72, 85, (stating that a reviewing court must assess the reasonableness of the defense *Page 28 
counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland at 689. As theStrickland court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689.
 {¶ 71} In evaluating whether claimed deficient performance prejudiced the defense, the relevant inquiry is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. Thus, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see, also, Bradley at paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different"). In the specific context of a capital case, to demonstrate prejudice, a petitioner must show that "there is a reasonable probability that the evidence would have swayed the jury to impose a life sentence." State v. Keith (1997), 79 Ohio St.3d 514, 536; see, also, Strickland at 695 (stating "[w]hen a defendant challenges a death sentence * * * the question is whether there is a reasonable probability that, absent the errors, the sentencer-including an appellate court, to the extent it independently *Page 29 
reweighs the evidence-would have concluded that the balance of aggravating and mitigating circumstances did not warrant death").
 {¶ 72} "The decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel.' Keith at 536. `"Attorneys need not pursue every conceivable avenue; they are entitled to be selective."' State v.Murphy [2001], 91 Ohio St.3d [516,] 542, quoting United States v.Davenport (C.A.7, 1993), 986 F.2d 1047, 1049." State v. Davis,116 Ohio St.3d 404, 2008-Ohio-2. Furthermore, "[t]he presentation of mitigating evidence is a matter of trial strategy. Keith at 530. Moreover, `strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" State v.Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 189, quotingWiggins at 521, quoting Strickland at 690-691.
 {¶ 73} In State v. Mundt, 115 Ohio St.3d 22, 2007-Ohio-4836, the court discussed a capital defendant's claim that trial counsel rendered ineffective assistance of counsel by failing to present certain mitigation evidence. The court stated:
 "In general, `counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.' State v. Treesh (2001), 90 Ohio St.3d 460, 490. See also State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221; State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396. `It may be that often the best strategy in a capital case is to attempt to humanize the defendant by presenting evidence of his personal qualities. We are unable to hold, however, that any other strategy would be so unreasonable as to constitute ineffective assistance of counsel.' Stanley v. Zant (C.A.11, 1983), 697 F.2d 955.
 Moreover, in evaluating the performance of counsel, `strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic *Page 30 
choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674."
 {¶ 74} In Mundt, the court rejected the defendant's argument that defense counsel rendered ineffective assistance of counsel during the mitigation phase by choosing not to present evidence regarding the defendant's low intelligence. The court noted that counsel's decision did not result from any lack of investigation and, more importantly, that the defendant failed "to demonstrate prejudice, i.e., a reasonable likelihood that the outcome of the case would have been otherwise but for the allegedly ineffective assistance." Id. at ¶ 159. The court explained: "[The defendant's] contention that being depicted as a struggling special-education student would have humanized him is rank speculation. [His] claim that the jury would have found this evidence compelling is equally speculative." Id.
 {¶ 75} Similarly, here, McKnight's argument that evidence regarding his paternal abandonment would have humanized him and caused the jury to vote for a life sentence is "rank speculation." Id. Additionally, courts have upheld death sentences in spite of mitigation evidence that a defendant had a troubled childhood. See, e.g., State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 195, ("As for the evidence relating to LaMar's background, we acknowledge that it is entitled to some weight. We accord it only modest weight, however, just as we have done in other capital cases of defendants with similarly troubled backgrounds") (citations omitted); State v. Coley (2001), 93 Ohio St.3d 253, 273
("Once again, as we have been in a number of death penalty cases, we are *Page 31 
presented with a record that contains evidence of unrelenting, shocking abuse of a child by adults, including a parent. However, after weighing the aggravating circumstances against the mitigating evidence, we find that the aggravating circumstances of murder in the course of robbery and kidnapping outweigh the mitigation evidence of Coley's young age and deprived childhood"); State v. Hoffner (Mar. 23, 2001), Lucas App. No. L-95-181 (upholding death sentence in spite of mitigating evidence of troubled childhood).
 {¶ 76} Furthermore, counsel made a tactical decision not to present this mitigation evidence for fear that it would open the door to evidence regarding McKnight's prior juvenile murder adjudication. InState v. Clark (1988), 38 Ohio St.3d 252, 255, the court held that "when a defendant raises the issue of history, character and background during the mitigation phase of a capital trial, he opens the door `to all relevant evidence.'" See, also, State v. Jackson (Oct. 5, 1989), Cuyahoga App. No. 55758; Evid.R. 405(B). In Clark, the defendant offered evidence to show he was a "quiet, religious man and good father" with a potential for rehabilitation. The court held that the defendant's prior criminal record was admissible to rebut this evidence. Additionally, the court noted that Evid.R. 405(B) provides that once the defendant introduces character evidence, his character witness is subject to cross-examination about relevant specific instances of conduct.
 {¶ 77} Here, had counsel chosen to present evidence regarding McKnight's background as a child, particularly his feelings of paternal abandonment, counsel would have opened the door to evidence regarding his prior juvenile murder *Page 32 
adjudication, as the trial court properly warned. Thus, as the record clearly indicates, McKnight's trial counsel's decision not to present mitigating evidence regarding childhood issues of paternal abandonment and the lack of a father figure was a strategic decision to avoid possibly opening the door to his prior juvenile murder adjudication. After McKnight finished presenting mitigation evidence, the state requested the court to place on the record defense counsel's decision not to present additional mitigation evidence. The following conversation occurred:
 "Mr. Gleeson: * * * I'm aware that [defense counsel] have had the opportunity and the benefit of mitigation specialists, of an investigator, of moneys for psychological assessment.
 In fact, they had wanted to have the right person, whether it's a specialist, go to New York, go to Texas, to do the things that they should be doing in mitigation, and I'm glad for it. But I'd like the record to be clear as to the fact that these other people whose information has not been presented today, is a tactical decision that, quite frankly, I might make myself, because I know where he's coming from.
 And I don't know if he wants to put it on the record, but I want to make sure it is put on the record that it is a knowing, intelligent strategic decision that nothing more will be presented at this point in time, particularly from an expert point of view, things like that.
 The Court: Thank you, Mr. Gleeson. Mr. Carson, do you care to give a response or follow-up, please?
 Mr. Carson: We've done our best to prepare a defense for Greg and evaluate everything that's available. Ultimately, the trip wasn't taken to New York or Texas either one only because of scheduling and interviews were done by phone, but nonetheless, they were done, and so the information was available to us and was factored into the decision to prepare and present the mitigation presentation we've given today.
 Mr. Canepa: One of the reasons why we raise this now is because in the event there is a sentence of death, you know, we have in our audience here Carol Wright, who is assisting today and she's one of the attorneys who would be the first in line to raise the issue of ineffective assistance in mitigation for failing to present experts and more family members and so forth, and that claim is *Page 33 
easily dealt with where it's clear on the record and there's averments made that all of that stuff was considered and discussed with the client and that for tactical reasons, it wasn't presented, and for the record, you know, the State is very aware of the limitations because of the prior homicide as a juvenile, and that seriously limits their ability to present things, and we fully understand that in the trial trenches, but sometimes that gets deluded and obscured as it moves up the appellate process, so we want to make it — in an abundance of caution, make it abundantly clear that these trial lawyers are good, they did everything they could do and considered everything they had and made every effort to investigate and that was discussed with their client, because we find ourselves in the unsavory position of having to defend the trial lawyers['] actions later on appeal, and it makes our jobs a whole heck of a lot more difficult where this kind of a record is not made at this level.
 The Court: All right, thank you, Mr. Canepa.
 Mr. Carson: * * * *
 * * * You know, I don't feel it's appropriate for us to go through line by line what we talked about with our client or what options were considered, rejected, considered, adopted, adopted or considered and left hanging, whatever the possible scenarios there are.
 Yes, I recognize the basis of the invitation. I made my representation to the Court that, you know, Mr. Toy, Mr. Miller and I have done everything we can to prepare for this. We are severely constrained, handcuffed, by the juvenile adjudication.
 One of Greg's cousins was able to make it here from New York. She's present. I am not calling her merely because of the way the Court has ruled so far on certain matters, that to introduce the evidence that she would have is going to be, I am confident, ruled to open the door to all kinds of things. So for that reason, she is not being called as a witness."
 {¶ 78} Therefore, based on this record, we find that trial counsel made a strategic decision after full and fair consideration and investigation. As such, trial counsel's performance was not deficient. Consequently, trial counsel was not ineffective.
 {¶ 79} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's ninth claim for relief.
 10. *Page 34 {¶ 80} In his eleventh[2] claim for relief, McKnight contends that the death penalty, as administered by lethal injection, violates his right against cruel and unusual punishment and his right to due process of law. In support of this claim, McKnight submitted the affidavit of an anesthesiologist who opined, "Ohio's lethal injection protocol creates an unacceptable risk that the inmate will not be anesthetized to the point of being unconscious and unaware of pain for the duration of the execution procedure." McKnight observes that the Supreme Court of the United States has granted certiorari to consider whether Kentucky's lethal injection procedure, which he asserts is similar to Ohio's, violates the Eighth Amendment prohibition against cruel and unusual punishment. See Baze v. Rees (2007), ___U.S.___, 128 S.Ct. 34,168 L.Ed.2d 809. McKnight further asserts that the trial court improperly determined that he could not challenge Ohio's lethal injection procedure in a post-conviction proceeding.
 {¶ 81} Even if the trial court improperly determined that a postconviction petition is not the correct procedure to challenge Ohio's lethal injection procedure, McKnight's eleventh claim for relief still fails. The Supreme Court of Ohio has consistently upheld Ohio's method of lethal injection against Eighth Amendment challenges. See, e.g.,State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 131; State v.Carter (2000), 89 Ohio St.3d 593, 608. Moreover, the Supreme Court of the United States recently upheld Kentucky's lethal injection procedure against an Eighth Amendment challenge. See Baze v. Rees (2008), ___U.S.___, ___S.Ct. ___, ___L.Ed.2d___ . Therefore, we are unable to conclude that Ohio's lethal *Page 35 
injection procedure, which appears facially similar to the procedure considered in Baze, is unconstitutional.
 {¶ 82} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's eleventh claim for relief.
 11. {¶ 83} In his twelfth claim for relief, McKnight contends that defense counsel rendered ineffective assistance of counsel by failing "to investigate and present available, relevant evidence in support of their motion to suppress." In particular, McKnight alleges that defense counsel's failure to call Deputy Kight as a witness during the suppression hearing and his counsel's failure to interview him either before or after the hearing constituted ineffective assistance of counsel. McKnight claims that res judicata does not bar this claim because he supported it with the postconviction depositions of his trial attorneys.
 {¶ 84} Even if res judicata does not bar McKnight's twelfth claim for relief, the claim lacks merit. Assuming for the sake of argument that counsel's failure to interview Deputy Kight or to call him as a witness during the suppression hearing could be classified as deficient performance, McKnight cannot show that such alleged deficient performance prejudiced his case. As we discussed, supra, none of the alleged falsehoods in the search warrant affidavit were material to the probable cause issue. Even without the alleged falsehoods, the essential facts supporting probable cause remained true. Deputy Kight's testimony would not have altered these facts. Therefore, counsel's failure to interview him or to call him as a witness at the suppression hearing did not affect the outcome of the *Page 36 
proceedings. As such, McKnight failed to show that his counsel's actions or inactions prejudiced him. Consequently, we find that McKnight's counsel was not ineffective.
 {¶ 85} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's twelfth claim for relief.
 12. {¶ 86} In his thirteenth claim for relief, McKnight contends that the state's failure to timely provide defense counsel with Deputy Kight's statement contributed to defense counsel's ineffectiveness as argued in his twelfth claim for relief.
 {¶ 87} McKnight's thirteenth claim for relief lacks merit for the same reasons that his twelfth claim lacks merit. He cannot demonstrate any prejudice.
 {¶ 88} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's thirteenth claim for relief.
 13. {¶ 89} In his fourteenth claim for relief, McKnight contends that trial counsel rendered ineffective assistance by failing to argue for a change of venue based upon race. He asserts that he could not receive a fair trial in an overwhelmingly white community.
 {¶ 90} We again find that res judicata bars McKnight's fourteenth claim for relief. McKnight does not offer any evidence that was unavailable for him to use on direct appeal. He cites statistical evidence and testimony from the voir dire transcript to support this claim. Both items were available for him to use on direct appeal. *Page 37 
 {¶ 91} Additionally, McKnight's claim lacks substantive merit. InState v. Elmore, Licking App. No. 2005-CA-32, 2005-Ohio-5940, the court considered and rejected a similar argument. In that case, the defendant, like McKnight, argued that trial counsel rendered ineffective assistance of counsel by failing to request a change of venue due to the lack of African-Americans in the available jury pool. In rejecting this argument, the court explained:
 "As previously noted appellant failed to present evidence outside of the record to * * * indicate deliberate exclusion of `distinctive groups' of the jury venire or jury panel involved. The statistical data and juror questionnaires do nothing to demonstrate intentional, systematic exclusion of minorities in the jury-selection process.
 Moreover, each impaneled juror confirmed that he or she had not formed an opinion about the guilt or innocence of the accused, or could put aside any opinion, and that he or she could render a fair and impartial verdict based on the law and evidence. State v. Treesh (2001), 90 Ohio St.3d 460, 464."
Id. at ¶¶ 69-70; see, also, State v. Braswell, Miami App. No. 2001CA22, 2002-Ohio-4468, at ¶ 8 (rejecting argument that trial court should have changed venue based upon racial composition when defendant failed to present evidence that the venire did not represent a fair cross section of the community or that any of the jurors who did serve was unable to render an impartial verdict); State v. Jones (2001), 91 Ohio St.3d 335,341, (concluding that trial court did not err by denying defendant's motion to change venue based upon racial composition of county when defendant failed to show that jury venire failed to represent fair cross-section of the community). *Page 38 
 {¶ 92} Similarly, here, McKnight failed to show that the jury venire failed to contain a representative cross-section of the community or that any of the seated jurors were unable to render an impartial verdict.
 {¶ 93} Accordingly, we find that the trial court did not abuse its discretion by dismissing his fourteenth claim for relief.
 14. {¶ 94} In his fifteenth claim for relief, McKnight contends that trial counsel rendered ineffective assistance of counsel by failing to reasonably investigate and present mitigating evidence during the penalty phase. In particular, he alleges that defense counsel should have employed a cultural expert to explain the distinctions between an African American and a Caribbean American. McKnight maintains that the American Bar Association guidelines "instruct defense counsel to investigate the client's `cultural' influences for mitigation" and that the Supreme Court of the United States has affirmed the ABA guidelines "as the standard for determining what is reasonable when evaluating counsel's performance in a capital case."
 {¶ 95} McKnight claims that a cultural expert "would have been helpful in bridging the communications gap that existed between counsel and McKnight and his family." He further claims that the lack of a cultural expert deprived him of individualized sentencing and that a cultural expert would have humanized him. Specifically, McKnight claims that the following summary derived from the cultural expert's report would have humanized him and helped sway the jury to vote for a life sentence, as opposed to a death sentence: *Page 39 
 "As Dr. Lewis's report indicates, McKnight was tormented with his identity. He was raised in the United States by an immigrant mother. McKnight's mother Lewin was raised in Trinidad. His father, who was absent from his life, was from Guyana. The history of the Caribbean is complex. Additionally, McKnight was raised within the strict Seventh Day Adventist religion. As a child and young teenager, he was deprived of activities that youth in the United States traditionally experience. He was an outsider who struggled to fit in. When McKnight resided in Texas with his godparents (who were from Trinidad), he suffered strict discipline — including humiliating beatings at the hands of his godfather, sometimes while McKnight was naked in the shower.
 Dr. Lewis also found that McKnight was haunted by feelings of abandonment. Not only had his father left him when he was just an infant, McKnight's mother had sent him to Texas to live with the Chandlers (his godparents) when he was only three years old. Lewin promised McKnight that she would bring him back to New York to live with her when he turned five, but when she visited on his fifth birthday, the Chandlers convinced Lewin to leave McKnight with them. McKnight told his mother that she had lied to him; he expressed his feeling that neither she nor anyone else liked him, and that he believed she loved his brother more.
 McKnight also often expressed feelings that he was the reason his father had left. He believed he was not lovable and that his father was ashamed of him. These feelings — according to his wife, his mother, his cousin, and his aunt — made him a person who searched for his sense of self in others. This, in turn, made McKnight vulnerable to others who were able to easily manipulate him because he wanted to fit in and gain the affection and approval of others."
 {¶ 96} The state disagrees with McKnight that the ABA standards set forth the benchmark for judging the reasonableness of counsel's performance in a capital case, but asserts that in any event, "McKnight failed to meaningfully address and meet his burden of showing prejudice." The state argues, "In fact, if trial counsel attempted to present evidence on McKnight's childhood, as his post-conviction attorneys in hindsight argue they should have, the State may have countered with McKnight's delinquent conduct (murder) committed as a teenager. That *Page 40 
seems to be something a capital defendant's trial counsel would avoid if at all possible."
 {¶ 97} In Wiggins, supra, the court considered an argument similar to the one McKnight raises, i.e., that trial counsel performed deficiently by limiting their investigation of potential mitigation evidence. The court noted that in Strickland, it "defined the deference owed such strategic judgments in terms of the adequacy of the investigations supporting those judgments: `[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Wiggins at 521-522, quoting Strickland at 690-691.
 {¶ 98} Thus, in a capital case when a defendant challenges defense counsel's investigation of potential mitigating evidence, the focus is "on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable." Wiggins at 523. "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for `reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged *Page 41 
conduct as seen `from counsel's perspective at the time.' (`[E]very effort [must] be made to eliminate the distorting effects of hindsight')." (Cites omitted.) Id.
 {¶ 99} Here, defense counsel made a tactical decision not to present further mitigation evidence. Even assuming that in hindsight, introducing cultural mitigation evidence would have been an appropriate theory, we may not evaluate counsel's decision in hindsight. Instead, we must consider counsel's decision at the time it was made and accord counsel's decision deference. At the time counsel made the decision, they reasonably believed that presenting further mitigation evidence would open the door to McKnight's prior juvenile murder adjudication. And counsel appears to have been correct in this regard. In his postconviction deposition, Attorney Carson stated that the judge warned defense counsel that if they brought up anything that predated McKnight's detention as a juvenile, then they would open the door to his prior juvenile adjudication for murder, which the defense obviously wanted to avoid. Therefore, McKnight cannot overcome the strong presumption that counsel made a reasonable strategic decision. Consequently, we do not find counsel's decision to decline to present further mitigation evidence deficient. See Darden v. Wainwright (1986),477 U.S. 168, 186 (concluding that counsel engaged in extensive preparation and that the decision to present a mitigation case would have resulted in the jury hearing evidence that petitioner had been convicted of violent crimes and spent much of his life in jail).
 {¶ 100} Additionally, McKnight merely speculates that evidence of his cultural background would have humanized him to the jury and led to a life *Page 42 
sentence. As we indicated before, speculation is not sufficient to demonstrate prejudice.
 {¶ 101} Furthermore, other Ohio appellate courts have rejected claims that failure to use cultural mitigation evidence constitutes ineffective assistance of counsel. See State v. Issa (Dec. 21, 2001), Hamilton App. No. C-000793 ("A postconviction claim does not show ineffective assistance of counsel merely because it presents a new expert opinion that is different from the theory used at trial. This claim involved nothing more than an alternative mitigation theory and did not provide substantive grounds for postconviction relief); State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233 ("Encouraging jurors to decide a defendant's sentence based on conclusions about groups of people, delineated by race or ethnicity, is [an] anathema to individualized sentencing. Sentencing in capital cases should be about the crime and the individual characteristics of the defendant. There is no room for group guilt or group mitigation").
 {¶ 102} McKnight nonetheless refers to State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338, to support his argument that counsel rendered ineffective assistance by failing to employ a cultural mitigation expert. That case, however, is distinguishable. In Dixon, the court did not consider the evidence regarding a cultural mitigation expert in the context of an ineffective assistance of counsel claim, but instead the court considered whether the trial court abused its discretion by prohibiting such evidence during the mitigation phase. The reviewing court determined that the trial court should have allowed the evidence *Page 43 
to be heard. In contrast, here, the question is not whether the trial court abused its discretion by prohibiting the evidence, rather it is a question of whether defense counsel's decision not to pursue this mitigation theory constituted ineffective assistance of counsel. Because the two issues are not the same, we do not find Dixon persuasive.
 {¶ 103} Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's fifteenth claim for relief and overrule McKnight's second assignment of error.
 V. {¶ 104} In his third assignment of error, McKnight contends that Ohio's postconviction relief procedure does not afford a defendant an "adequate corrective process" or comply with due process or equal protection. In particular, he complains that the process denies a petitioner the opportunity to conduct discovery, which he claims is necessary in order to properly support a postconviction petition with evidence outside the record.
 {¶ 105} This court has already addressed this issue and held that "[a] postconviction relief petitioner is not entitled to discovery to help the petitioner establish substantive grounds for relief." State v.LaMar (Mar. 17, 2000), Lawrence App. No. 98CA23. In LaMar, we explained:
 "`R.C. 2953.21(C) expressly provides that the initial determination of whether a postconviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for postconviction relief is not entitled to discovery during the initial stages of a postconviction proceeding.' [State v. Ashworth (Nov. 8, 1999), Licking App. No. 99-CA-60.] *Page 44 
 In State v. Kinley (Nov. 12, 1999), Clark App. No. 99 CA 20, unreported, the court likewise held that a postconviction relief petitioner is not entitled to discovery during the initial process of determining whether to grant an evidentiary hearing. In reaching its decision, the Kinley court rejected the petitioner's argument that the general rules of civil procedure apply to postconviction proceedings and permit discovery during the initial stages of the process. The court noted that the civil rules do not apply to `special proceedings.' The Court stated:
 `Civ.R. 1(A) provides:
 These rules prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity, with the exceptions stated in subdivision (C) of this rule.
 Civ.R. 1(C) provides that the civil rules, `to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * in all other special statutory proceedings." Postconviction proceedings are special statutory proceedings, and R.C. 2953.21
makes no provision for the application of the Ohio Rules of Civil Procedure. Thus, * * * the civil rules do not entitle a petitioner to discovery in postconviction proceedings.' State v. Kinley (Nov. 12, 1999), Clark App. No. 99 CA 20, unreported (citing State v. Spirko
(1998), 127 Ohio App.3d 421; State v. Smith
(1986), 30 Ohio App.3d 138, 140; State v. Chinn (Aug. 21, 1998), Montgomery App. No. 16764, unreported).
 Like the courts in Kinley and Ashworth, we do not believe that the postconviction relief petitioner is entitled to conduct discovery during the initial stages of the proceedings. As the Ashworth court noted, the statute expressly outlines the material the trial court shall consider when determining whether to grant a hearing."
See, also, State ex. rel. Love v. Cuyahoga County Prosecutor'sOffice (1999), 87 Ohio St.3d 158, 159; Hand, supra; Ahmed, supra;State v. Jackson, Trumbull App. No. 2004-T-0089, 2006-Ohio-2651;State v. Yarbrough (Apr. 30, 2001), Shelby App. No. 17-2000-10;State v. Jones (Dec. 29, 2000), Hamilton App. No. C-990813.
 {¶ 106} Accordingly, we overrule McKnight's third assignment of error. *Page 45 
 VI. {¶ 107} In his fourth assignment of error, McKnight contends, "the cumulative errors set forth in [his] substantive grounds for relief merit reversal or remand for a proper postconviction process."
 {¶ 108} "The cumulative error doctrine holds that a judgment may be reversed if the cumulative effect of multiple harmless errors deprives a defendant of his constitutional rights, even though the errors individually may not rise to the level of prejudicial error. State v.Garner (1995), 74 Ohio St.3d 49, 64; State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus. If, however, a reviewing court finds no prior instances of error, then the doctrine has no application. See State v. Bennett, Scioto App. No. 05CA2997, 2006-Ohio-2757, ¶ 50. See, also, State v. Hairston, Scioto App. No. 06CA3089, 2007-Ohio-3707, ¶ 41. Because we found no merit to any of McKnight's claims for relief, his cumulative error argument is unavailing.
 {¶ 109} Accordingly, we overrule McKnight's fourth assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 46 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and that Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion.
[2] McKnight appears to address his tenth claim for relief within his fourth assignment of error. *Page 1