[Cite as *State v. McKnight*, 2021-Ohio-2673.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 20CA721 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| GREGORY McKNIGHT, | : | |
| Defendant-Appellant. | : | **RELEASED 8/3/2021** |

<u>APPEARANCES</u>:

John Gleeson, Marisa R. Taney, and Malini Malhotra, Debevoise & Plimpton LLP, New York, New York and John P. Curp, Blank Rome LLP, Cincinnati, Ohio, for appellant.

James Payne, Vinton County Prosecuting Attorney, and Stephen E. Maher, Special Assistant Vinton County Prosecutor, Sr. Assistant Ohio Attorney General's Office, Columbus, Ohio, for appellee.

Hess, J.

{¶1} Gregory McKnight appeals the trial court's denial of his motion for leave to seek a motion for new trial pursuant to Crim.R. 33(B). McKnight contends that the trial court abused its discretion and violated his due process rights when it denied his motion because he was unavoidably prevented from filing his motion for new trial within the 14-day time period under Crim.R. 33(B). He argues he had no knowledge of the juror misconduct and could not have learned of it within the 14 days in the exercise of reasonable diligence.

{¶2} The verdict was rendered in McKnight's case on October 14, 2002. McKnight had until October 28, 2002 to interview the jurors and file a motion for new trial. However, the trial court did not review whether McKnight made any effort to interview the jury between October 14 and October 28, 2002. Instead, without a hearing, the trial court

cited to an affidavit made over a year later in December 2003 by McKnight's attorney, which described juror interviews that occurred in that month. The trial court erred as a matter of law when it failed to apply the correct legal standard and applicable law to look at the efforts, if any, made by McKnight during the relevant 14-day period in Crim.R. 33(B). Additionally, the trial court erred when it applied the incorrect legal standard to whether McKnight's motion for leave was filed within a reasonable time of discovering the jury misconduct. Thus, we sustain his assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings.

## I.      Procedural History

{¶3}   On October 14, 2002, a jury found McKnight guilty of aggravated murder, kidnapping, aggravated robbery, and murder and recommended he be sentenced to death.   The trial court accepted the jury's recommendation and issued its sentence November 1, 2002. McKnight unsuccessfully appealed to the Supreme Court of Ohio. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315. The United States Supreme Court denied further review of McKnight's conviction and death sentence. *McKnight v. Ohio,* 548 U.S. 912, 126 S.Ct. 2940, 165 L.Ed.2d 965 (2006). Subsequent postconviction relief and habeas corpus petitions were also unsuccessful. *See State v. McKnight*, 4th Dist. Vinton No. 07CA665, 2008-Ohio-2435 and *McKnight v. Bobby*, S.D.Ohio No. 2:09-CV-059, 2018 WL 524872 (Jan 24, 2018), respectively.

{¶4}   On April 1, 2019, McKnight filed a motion for leave to seek a motion for new trial under Crim.R. 33(A)(2) for misconduct of the jury. McKnight alleged that in his "challenges to his conviction and sentence in the state and federal courts, he repeatedly sought permission to inquire of the jurors in his case. Those requests were denied * * *."

McKnight alleged that he was unable to interview the jury until 2017.[1] He attached an affidavit from an investigator who testified that he began locating and interviewing jurors in May 2017. Additionally, McKnight attached affidavits of two jurors, one affidavit acquired in January 2018 and one in February 2019, each alleging incidents of juror misconduct that occurred during jury deliberations.

**{¶5}** The state opposed the motion for leave on the ground that McKnight failed to prove by clear and convincing evidence that he was unable to interview the jury in 2002, immediately after the verdict was rendered. The state attached excerpts from the trial transcript in which the trial judge released the jury from service and instructed them that they were free to discuss the case with anyone. The state also argued that McKnight's attorney interviewed two jurors in December 2003 and prepared an affidavit in that same month describing the information obtained from those interviews. The state argued that McKnight could have interviewed the jury immediately after the verdict was rendered in October 2002 and, at the very latest, in December 2003.

**{¶6}** The trial court denied McKnight's motion for leave to seek a motion for new trial without holding an evidentiary hearing or an oral argument. The trial court determined that McKnight was not prevented from interviewing the jury prior to 2017 because the December 2003 affidavit of his attorney showed that he was able to interview the jury in December 2003. Based on the 2003 interviews, the trial court held, "The Court therefore finds that Defendant was not unavoidably prevented from obtaining juror affidavits until

---

[1] Though McKnight claims he was repeatedly denied access to the jury by state and federal courts after his sentence was issued, he does not explain how he was able to gain access to the jury for the first time in 2017 (i.e., whether he was required to file a request in a federal or state court, or whether he made this effort on his own initiative).

the *"Pena"* decision."[2] Additionally, the trial court found that McKnight's delay in seeking leave to file a motion for new trial was unreasonable because, "McKnight initially bypassed this Court instead bringing his claim in federal court. He only returned to this Court after his efforts in federal court were rejected, returning to this Court a year after his claim was presented in federal court."

## II.      Assignment of Error

**{¶7}**   McKnight assigns the following error for review:

I.      The trial court abused its discretion, and violated Appellant's due process rights, when it denied Appellant's Motion for Leave to Seek a Motion for New Trial under Criminal Rule 33(B) where Appellant was unavoidably prevented from presenting within 14 days of the trial verdict evidence of overt racist bias in the court's jury deliberations. U.S. Const. amend. 14; Ohio Const. Art. I, § 16.

**{¶8}**   McKnight contends that there are three interrelated errors. First, the trial court made the determination of whether *Pena-Rodriguez, supra,* had retroactive application to the motion for leave to seek a motion for new trial. He argues, "The trial court's conclusion regarding retroactivity is irrelevant to a decision on the merits of McKnight's motion for leave." Second, McKnight contends that the trial court incorrectly determined that he was not prevented from obtaining evidence of juror misconduct prior to 2017 because Evid.R. 606(B), which governs the competency of juror as witness, prevented them from interviewing the jury about potential misconduct. Third, McKnight

---

[2] *Pena-Rodriguez v. Colorado*, __U.S.__,137 S.Ct. 855, 197 L.Ed.2d 107 (2017), which held that, "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Id.* at synopsis. McKnight's underlying motion for a new trial alleges that jurors relied upon racial stereotypes or animus to convict him and relies on *Pena-Rodriguez* for authority. However, the issue before the trial court was not whether McKnight is entitled to a new trial under *Pena-Rodriguez*, but whether he should be granted leave to file a motion for new trial.

argues that the trial court erred in finding that his motion for leave was not filed within a reasonable time after the jury misconduct was discovered. He argues that his federal public defenders "were denied authority to represent him in state court" and this explained his delay in pursuing his motion for leave in state court.

### III.    Standard of Review and Legal Analysis

**{¶9}**    "A motion for new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a 'sound reasoning process'; this review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." (Internal citations and quotations omitted.) *State v. Gavin*, 2018-Ohio-536, 105 N.E.3d 373, ¶ 12 (4th Dist.).

**{¶10}**  The motion before the trial court was a motion for leave to file a motion for a new trial – not a motion for a new trial. McKnight's ground for seeking a new trial was jury misconduct under Crim.R. 33(A)(2), which allegedly occurred during jury deliberations. *See* Crim.R. 33(A)(2) ("A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (2) misconduct of the jury, prosecuting attorney, or the witnesses for the state; * * * .").

**{¶11}**  An application for a new trial based on jury misconduct must be filed within 14 days after the verdict is rendered, "unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for new trial *

* * ." Crim.R. 33(B). The definition of "unavoidably prevented" is: "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984). Therefore, the only issue before the trial court was whether McKnight showed by clear and convincing evidence that he had no knowledge of the jury misconduct and in the exercise of reasonable diligence could not have learned of the misconduct within the 14 days after the verdict was rendered. The verdict was rendered on October 14, 2002.

**{¶12}** The alleged jury misconduct occurred during deliberations, not on the record in open court. "As a general rule, no one—including the judge presiding at trial— has a 'right to know' how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror." *Koch v. Rist*, 89 Ohio St.3d 250, 252, 2000-Ohio-149, 730 N.E.2d 963 (acknowledging "the cardinal principle that the deliberations of the jury shall remain private and secret in every case"). Because jury deliberations are conducted in secrecy, misconduct that occurs during jury deliberations is unknown unless one or more members of the jury voluntarily discloses it:

> Misconduct of the jury, the prosecuting attorney or witnesses for the state are particularly susceptible to nondiscovery within fourteen days after the verdict where the misconduct did not consist of affirmative acts at trial but, instead, involve matters not occurring in open court and generally not known to either the court or counsel at the time of the occurrence.

*Walden* at 146 (finding that the trial court should have granted defendant's motion for leave to file a motion for a new trial and remanded to the trial court to address the merits of the motion for new trial, which was based on jury and prosecutorial misconduct).

**{¶13}** Here it appears from the limited record before us that none of the jurors voluntarily disclosed that any misconduct occurred within 14 days after the verdict was rendered. In his motion for leave to seek a motion for new trial, McKnight described the efforts taken after the verdict was rendered to interview the jury. He contends that he was unable to investigate possible jury misconduct though "he repeatedly sought permission to inquire of the jurors" in his "challenges to his conviction and sentence" and "those requests were denied" by the courts. In his reply brief in support of his motion for leave, McKnight again states that "after his conviction McKnight repeatedly sought permission from the state courts to obtain juror statements" and the courts denied his request. McKnight does not explain whether his trial counsel was unable to interview the jury immediately after the verdict was rendered without first petitioning the trial court for permission.

**{¶14}** In *State v. Schiebel*, 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990) two co-defendants, Schiebel and Warner, filed motions for leave to file a motion for new trial outside the 14-day period alleging jury misconduct. Warner's attorneys interviewed several jurors immediately after the verdict was rendered, but did not ask about "juror misconduct, outside influence, tampering, or other improper conduct" during the interview. *Id.* Because his attorney made no attempt to ask questions about any misconduct during the interview, the court determined, "It cannot be said with any degree of probability, let alone conclusively, that Warner was unavoidably prevented from discovering any alleged

misconduct before the fourteen-day period lapsed." *Id.* Schiebel's attorney made no attempt to interview the jury during the 14-day period and the court held, "It cannot be said that Schiebel was unavoidably prevented from discovering an incident of juror misconduct when he made no attempt toward such discovery." *Id.*

{¶15} Here, the trial court denied McKnight's request for an evidentiary and oral hearing on the motion for leave so we are limited to reviewing the parties' briefs. It is not clear from the record what efforts were made to interview the jury during the 14-day period following the verdict (the period of October 14, 2002 to October 28, 2002) and whether a court order barred juror interviews during that 14-day period. McKnight includes an affidavit from an investigator who testified that he was assigned to McKnight's case in May 2017 and was able to locate all 12 jurors and speak with a number of them between August 2017 and February 2019.  McKnight also included two juror affidavits describing the alleged jury misconduct, one was executed on January 12, 2018 and the other on February 20, 2019. McKnight's motion for leave to file a motion for new trial was filed on April 1, 2019. These efforts began 15 years after the verdict was rendered.

{¶16} Also problematic is McKnight's representation that he sought to interview the jury in "challenges to his conviction and sentence." The jury verdict was rendered on October 14, 2002 and triggered the 14-day period. The trial court did not issue its sentence until November 1, 2002. Therefore, if McKnight failed to make any effort to interview the jury until after the November 1, 2002 sentencing order, his efforts to discover any misconduct were undertaken after the 14-day period lapsed on October 28, 2002.

{¶17} The state opposed the motion for leave and argued McKnight failed to exercise reasonable diligence to discover the alleged jury misconduct. The state

submitted excerpts from the October 14, 2002 trial transcript that showed that after the trial court read the jury verdict in open court, it dismissed the jury with the following instruction:

> As I indicated earlier, you may discuss this case with anyone after you are released from jury service here today, but also as I indicated to you earlier, you don't have to. You don't have to discuss it with anyone.
>
> So again, you may discuss the case with anyone, but you are not required to do so. Whether you discuss the case with counsel or anyone else after you are discharged is a matter of your own personal choice.

Thus, it would appear from the record that, at least immediately after the jury was discharged, trial counsel was free to interview the jury about any type of misconduct.

**{¶18}** The state also submitted an affidavit executed on December 18, 2003 by one of McKnight's attorneys who testified that she had interviewed two jurors in December 2003 and discussed jury deliberations with them. The state argued that questions about jury misconduct could have been investigated immediately after the jury verdict in 2002, or alternatively, at least as early as 2003.

**{¶19}** The trial court denied McKnight's motion for leave. However, the trial court erred as a matter of law and applied an incorrect legal test. It did not review McKnight's efforts during the 14-day period after the verdict was rendered to assess whether McKnight exercised reasonable diligence to discover any jury misconduct.  It did not determine whether McKnight had shown by clear and convincing evidence that he had no knowledge of the jury misconduct and could not have learned of it in the exercise of reasonable diligence within 14 days of the jury verdict. Instead, the trial court asked, "Was McKnight unavoidably prevented from obtaining juror affidavits prior to the '*Pena*' decision? Absolutely not." Decision, p. 2. The jury verdict was rendered on October 14,

2002. This triggered the 14-day time period for filing a motion for new trial, not the *Pena-Rodriguez, supra,* decision. *Pena-Rodriguez* was decided in 2017 and, as McKnight has argued on appeal, it has no relevance to the legal analysis of a motion for leave to file a motion for new trial. For this reason alone, we sustain McKnight's assignment of error and remand the case to the trial court for the purposes of holding an evidentiary hearing on the matter.

**{¶20}** Because there was no focus on the efforts McKnight's attorney took to interview the jury between October 14, 2002 and October 28, 2002, and McKnight's motion for leave describes efforts that appear were taken after November 1, 2002, the record before us is insufficient to determine whether leave should be granted or denied. The trial court should hold an evidentiary hearing on the motion for leave to determine whether any effort was undertaken, including, but not limited to: (1) what efforts McKnight's attorney took to interview the jury immediately after the verdict was rendered on October 14, 2002 and during the 14-day period following it; (2) whether during this 14-day period, a court order barred juror interviews; (3) if McKnight was precluded by court order from interviewing the jury during the fourteen14-day period, when were those orders lifted; and (4) did McKnight exercise reasonable diligence after any court orders were lifted to interview the jury.

**{¶21}** McKnight argues that Evid.R. 606(B) prevented him from discovering jury misconduct. However, we reject this argument. Evid.R. 606(B) does not bar juror interviews and it did not prevent him from discovering jury misconduct. Instead, it establishes what evidence can be used to show alleged jury misconduct and provides:

> **(B) Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or

statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.

{¶22} McKnight's argument that he was prevented by Evid.R. 606(B) from investigating jury misconduct misconstrues the rule and "puts the cart before the horse." He must first interview the jury and ask questions about potential juror misconduct, (i.e., outside influences, tampering, attempted threats or bribes, or any other improper conduct) before he can determine whether there was any juror misconduct and the nature of it. Only after interviewing the jury could he learn the type of jury misconduct that occurred. A defendant who is not unavoidably prevented from discovering the misconduct would not be entitled to leave to file a motion for new trial based on jury misconduct *regardless of the type of jury misconduct involved*. Evid.R. 606(B) would be irrelevant because a defendant would not be entitled to file a motion for a new trial under Crim.R. 33(A)(2) for any type of jury misconduct. The lack of reasonable diligence – not Evid.R. 606(B) –would bar any motion for a new trial under Crim.R. 33(A)(2). *See State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990).

{¶23} The trial court's preoccupation with the *Pena-Rodriguez* decision and whether it had retroactive application here shows that the trial court conflates two distinct issues. The trial court's finding goes to the merits of McKnight's underlying motion for a

new trial rather than the threshold issue of whether he should be granted leave to file a motion for a new trial (i.e., whether he was unavoidably prevented from discovering the evidence upon which he relies). The trial court can and should evaluate McKnight's motion for leave without considering *Pena-Rodriguez*; Crim.R. 33 and *Schiebel, supra,* provide the proper analytical framework.[3]

**{¶24}** Last, analyzing a motion for leave to file a motion for new trial is a two-step process. If McKnight can show that he was unavoidably prevented from filing his motion for new trial within the 14-day time period following the verdict, then next he must show that the motion for leave was filed within a reasonable time after the basis for it was discovered. "If a significant delay occurs, the trial court must ascertain whether the delay was reasonable under the circumstances or whether the movant adequately explained why the delay occurred." *State v. Hill*, 8th Dist. Cuyahoga No. 108250, 2020-Ohio-102, ¶ 17; *State v. Gavin*, 2018-Ohio-536, 105 N.E.3d 373, ¶ 17-18 (4th Dist.) (where defendant was aware of the grounds for new trial in summer of 2015, obtained affidavit in October 2015, but did not file motion for leave for new trial until May 2017 and he failed to proffer any reason justifying delay, his motion was not filed within a reasonable time after discovering the grounds). Here, the trial court jumped to step two without a proper legal analysis of step one. And, instead of reviewing (1) when the alleged jury misconduct was discovered, (2) comparing it with the timing of the motion for leave, and (3) determining whether McKnight adequately explained why the delay occurred, the trial court focused on the procedural posture of McKnight's federal habeas case. It found, "McKnight initially

---

[3] We take no position on the applicability of *Pena-Rodriguez* to McKnight's case, nor do we assess the credibility of the supporting affidavits. These are matters that concern the underlying motion for a new trial and are not before this Court.

bypassed this Court instead bringing his claim in federal court . . . returning to this Court a year after his claim was presented in federal court. This Court finds this delay was unreasonable." Again, this was not the proper manner or focus of the inquiry.

**{¶25}** We noted at the outset that an appellate court reviews a trial court's denial of a motion for leave to file a motion for new trial under an abuse-of-discretion standard. But when the trial court's order contains an error of law in misconstruing or misapplying the law, then the appellate court reviews the matter de novo. *E.g., State v. Wright*, 2017-Ohio-9041, 101 N.E.3d 496, ¶ 25. Because the trial court erred as a matter of law in applying the wrong legal analysis to McKnight's motion for leave to file motion for new trial, we sustain his sole assignment of error, vacate the trial court's judgment, and remand for an evidentiary hearing on the motion for leave to file a motion for new trial in accordance with this judgment.

## IV.     Conclusion

**{¶26}** We sustain McKnight's assignment of error, reverse the judgment of the trial court, and remand for further proceedings.

JUDGMENT REVERSED, CAUSE REMANDED.


Abele, J., dissenting

**{¶27}** I respectfully dissent.   The principal opinion reverses the trial court's judgment that overruled appellant's motion for leave to file a new trial motion for two reasons (1) the trial court did not consider what efforts, if any, appellant undertook to uncover evidence during the 14-day period that followed the 2002 jury verdict, and (2) the trial court did not correctly review whether appellant filed his motion within a reasonable

time after he obtained juror affidavits.

{¶28} However, after my review of the trial court proceedings, I believe (1) the parties identified and focused their arguments on the correct legal standard, and (2) the trial court reviewed the arguments that the parties actually presented, then applied the correct legal standard when it overruled appellant's motion.

{¶29} Thus, I believe this court should affirm trial court's judgment.

Pena-Rodriguez

{¶30} The case sub judice involves appellant's 2002 trial for murder. Years after appellant's convictions, two jurors recalled one juror making racist comments about the appellant during deliberations.

{¶31} Recently, the United States Supreme Court considered the issue of juror racial animus. In *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), the court created an exception to rules that prohibit inquiry into statements made during jury deliberations (the no-impeachment rule), and held that courts may now consider a juror's "clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez*, 137 S.Ct. at 869.

{¶32} In *Pena-Rodriguez*, a jury found the defendant guilty of a sex offense. After the trial, two jurors provided affidavits and stated that juror H.C. displayed a racist attitude during deliberations. H.C. indicated that, in his "experience as an ex-law enforcement officer, Mexican men had a bravado that caused them to believe they could do whatever they wanted with women," and this defendant " 'did it because he's Mexican and Mexican men take whatever they want'" and " 'nine times out of ten Mexican men were guilty of being aggressive toward women and young girls.' " *Id.*, quoting App. at 110. H.C. also

questioned an alibi witness' credibility because he is " 'an illegal.' " *Id.*, quoting App. at 110. The defendant requested a new trial and, although the court acknowledged "apparent bias," the court concluded that Colorado's no-impeachment rule (Rule 606(b)) protects juror statements made during deliberations.

**{¶33}** After the Colorado Supreme Court rejected the defendant's appeal, the United States Supreme Court "granted certiorari to decide whether there is a constitutional exception to the no-impeachment rule for instances of racial bias." *Id.* at 863. The Supreme Court held that, contrary to state no-impeachment rules, courts can consider jury racial bias evidence to evaluate whether a defendant has been deprived of the fundamental right to an impartial jury:

> The jury is to be "a criminal defendant's fundamental 'protection of life and liberty against race or color prejudice.'" *McCleskey v. Kemp*, 481 U.S. 279, 310, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (quoting *Strauder, supra*, at 309). Permitting racial prejudice in the jury system damages "both the fact and the perception" of the jury's role as "a vital check against the wrongful exercise of power by the State." *Powehow rs v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *cf. Aldridge v. United States*, 283 U.S. 308, 315, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *Buck v. Davis, ante*, at 22.

*Id.* at 868. Thus, when a juror relies on racial stereotypes or animus to convict a defendant, courts may decline to apply no-impeachment rules and consider jury testimony to overturn verdicts. See, also, *State v. Ford*, 158 Ohio St.3d 139, ¶ 300.

**{¶34}** The *Pena-Rodriguez* court cautioned, however, that "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." *Pena-Rodriguez*, 137 S.Ct. at 869. Instead, "there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and

resulting verdict." *Id.* Moreover, "the statement must tend to show that racial animus was a significant motivating factor in a juror's vote to convict." *Id.* The court declined, however, to define any "practical mechanics of acquiring and presenting" racial bias evidence sufficient to cast serious doubt on the fairness and impartiality of the verdict. *Id.* Rather, "state rules of professional ethics and local court rules" should help shape and guide the procedure. *Id.* Additionally, the court noted that, although jurors sometimes approach counsel or the court shortly after a verdict, the court did not suggest that racial bias concerns must be brought to a court's attention within a short time after the verdict. *Id.* at 870.

**{¶35}** Recent cases have addressed the *Pena-Rodriguez* exception. In *United States v. Smith*, 106 Fed. R. Evid. Serv. 246, 2018 WL 1924454 (D.Minn.Apr. 24, 2018), the jury foreperson emailed the court four years after conviction and indicated *Pena-Rodriguez* "could pertain to [the defendant's] case" because "[a] racial remark was made during our deliberations." *Id.* at *4. After the court shared the juror's comment "You know he's just a banger from the hood, so he's got to be guilty," the defendant filed a new trial motion. The court first determined that the late discovery constituted excusable neglect for the failure to file the motion within 14 days of his conviction, as Fed.R. Crim.P. 33 requires. See Fed.R. Crim.P. 45(b)(1)(B) and *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010). As for the merits, because little difference exists between "banger from the hood" and he's guilty " 'because he's Mexican,' " the court determined that "racial animus was a significant motivating factor in the juror's vote to convict." *Id.* at *10 and *9, quoting *Pena–Rodriguez*, 137 S. Ct. at 861. The court thus concluded that the defendant did not have a fair and impartial jury and should have a new trial. *Id.* at *14.

**{¶36}** In another case, *People v. Thompson*, 2018 Il. App (3d) 160604-U (Ill. App. Ct. 2018), five days after trial a juror related that during deliberations (1) two jurors stated that the defendant had an arrest record, but no such evidence had been presented at trial, and (2) another juror, when he referred to the defendant's videotaped questioning, stated that " 'these guys are probably all high on drugs.' " Id. at ¶ 12. Although the trial court denied the defendant's request for a hearing to address racial animus allegations, the appellate court determined that sufficient evidence existed for an evidentiary hearing because "some form of improper extraneous information" infiltrated the jury room. *Id.* at ¶ 25.

Appellant's Motion and Response

**{¶37}** Appellant's motion focused on the Ohio Crim.R. 33(B) standard for leave to file a new trial motion outside the 14-day period after trial. In general, a defendant may file a new trial motion outside of the prescribed time period if clear and convincing evidence shows that the defendant was unavoidably prevented from filing a new trial motion.

**{¶38}** Appellant argued that a party is unavoidably prevented from filing a timely new trial motion if the party (1) had no knowledge of the existence of the ground to support the motion, and (2) in the exercise of reasonable diligence could not have learned of the existence of that ground within the pertinent time window. In particular, appellant claimed that he could not obtain juror affidavits until *Pena-Rodriguez* "opened the door for [appellant] to seek out evidence of juror misconduct based on racial animus and bias in jury deliberations." Appellant thus argued that until *Pena-Rodriguez,* Evid.R. 606(B) prevented a defendant from complying with the Crim.R. 33(C) requirement to support a

new trial motion based upon juror misconduct with juror affidavits.   Now, appellant

reasoned, *Pena-Rodriguez* allows him "to seek out–and obtain–clear and convincing

evidence of juror misconduct that tainted his trial and sentencing," because, until *Pena-*

*Rodriguez*, he had no avenue to seek "the required evidence to demonstrate juror

misconduct."

**{¶39}** Appellant's motion outlines appellant's theory:

> [Appellant] had grave concerns about the role played by racial
> animus in his conviction and death sentence, but was unable to investigate
> those claims because of the prohibition on the use of testimony from jurors
> about deliberations, which is set forth in Rule 606(b) of both the Ohio and
> Federal Rules of Evidence.  In [appellant]'s challenges to his conviction and
> sentence in the state and federal courts, he repeatedly sought permission
> to inquire of the jurors in his case.  Those requests were denied because
> the courts consistently held that any testimonial evidence of juror
> misconduct was inadmissible under Rule 606(b).
> In 2017, however, that rule was altered by the Supreme Court's
> decision in *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017).
> Acknowledging that racial bias is a "familiar and recurring evil that, if left
> unaddressed, would risk systemic injury to the administration of justice," the
> Supreme Court held that "where a juror makes a clear statement that
> indicates he or she relied on racial stereotypes or animus to convict a
> criminal defendant, the Sixth Amendment requires that the no-impeachment
> rule give way in order to permit the trial court to consider the evidence of
> the juror's statement and any resulting denial of the jury trial guarantee."
> *Pena-Rodriguez*, 137 S. Ct. At 868, 869.  *Pena-Rodriguez* thus opened the
> door for [appellant] to seek out evidence of juror misconduct based on racial
> animus and bias in jury deliberations.

**{¶40}** In his conclusion, appellant reiterated the essence of his argument:

"[Appellant] has shown by clear and convincing evidence that he was unavoidably

prevented from speaking with the jurors in his case and from learning the facts contained

in the attached affidavits until the Supreme Court's decision in *Pena-Rodriguez.*"

Appellant further pointed out that his 2010 and 2011 federal court decisions denied his

requests to depose jurors about racial bias.   Moreover, appellant's reply memorandum

asserted that "the only questions before the Court in deciding this preliminary Motion for Leave are (i) whether [appellant] was unavoidably prevented from presenting evidence of juror misconduct before the Supreme Court decided *Pena Rodriguez* and (ii) whether he acted diligently to pursue those claims once they were available."

**{¶41}** Consequently, appellant presented no evidence or argument to the trial court about the 14-day window, but instead claimed "before *Pena-Rodriguez* changed the law, [appellant] was unavoidably prevented from developing or presenting the necessary evidence to prove his claims of racial bias." Notably, and as I discuss infra, appellant did not argue that he could not have questioned the jurors after the verdict, but rather that he could not obtain affidavits until *Pena-Rodriguez* opened the door to this line of inquiry.

**{¶42}** The state responded that appellant (1) presented no evidence to show what efforts he undertook within 14 days after the 2002 verdict, and (2) the affidavits did not address whether appellant had been unavoidably prevented from speaking with the jurors in a more timely fashion. The memorandum contra argued that the first question should be whether appellant established, by clear and convincing evidence, that he was unavoidably prevented from discovering the juror's statements within the prescribed time period. The state argued that, although appellant relied on *Pena-Rodriguez* to show why he could not file his motion within 14 days of the verdict, *Pena-Rodriguez* does not constitute clear and convincing "evidence" that appellant was unavoidably prevented from timely filing his motion.

**{¶43}** The state also pointed out that, because appellant's legal team interviewed two jurors in December 2003, nothing prevented appellant from learning about the racist comments. Moreover, "[r]egardless of the *Pena-Rodriguez* decision, [appellant] had been

free to interview jurors at all times from and after October 14, 2002, which was the date [the trial court] released the jurors from their admonition to not discuss the case." Thus, the state claimed, even though the *aliunde* rule prohibits courts from considering juror testimony to impeach a verdict, the rule did not prevent appellant "from making appropriate inquiries."

## Trial Court Decision

**{¶44}** During the trial court proceedings, appellant agreed that the court should first determine whether appellant established he was unavoidably prevented from timely filing his motion. In other words, the parties did, in fact, inform the court of the correct legal standard, including the 14-day window. When the trial court overruled appellant's motion, the court found that appellant was not unavoidably prevented from obtaining juror affidavits before *Pena-Rodriguez*:

> in fact did seek out and obtain juror affidavits as shown by the affidavit of Kathryn Sandford attached as Exhibit 1 to State's Opposition to [appellant]'s Motion for Leave to File A Motion For New Trial as filed March 11, 2019. The Fifth, Sixth, and Seventh Grounds For Relief set forth in [appellant]'s post conviction petition filed January 9, 2004, and as amended, claimed that his jury engaged in misconduct and offered in support of his claim the affidavit of assistant state public defender restating what two jurors told her.

Thus, the court determined that appellant "was not [u]navoidably prevented from obtaining juror affidavits until the '*Pena*' decision."

**{¶45}** Consequently, in the case sub judice I do not agree with the principal opinion that the trial court applied an incorrect legal standard. Instead, as I set forth below, I believe the record shows that the trial court used the correct standard to decide this matter in light of the arguments that the parties actually presented.

## Principal Opinion and Dissent

{¶46} The principal opinion holds that the trial court should have considered evidence and issues that appellant deliberately chose not to present and argue. Thus, the opinion places the onus on the trial court to independently review the actions of trial counsel after the 2002 verdict. Appellant, however, chose not to present any evidence or argument other than *Pena-Rodriguez* now permits courts to consider juror testimony to evaluate juror racial animus. Because appellant consistently argued that the *aliunde* rule is the reason he did not submit juror affidavits, I find it difficult to conclude that the trial court erred by not considering an argument appellant did not make, or consider evidence appellant did not present.

{¶47} The principal opinion points to two sentences in the trial court's decision to support its conclusion that the trial court applied an incorrect legal standard: "Was McKnight unavoidably prevented from obtaining juror affidavits prior to the *'Pena'* decision? Absolutely not." The principal opinion then states that the date of the jury's verdict, October 14, 2002, "triggered the 14-day time period for filing a motion for new trial, not the *Pena-Rodriguez, supra*, decision," and continues: "*Pena-Rodriguez* was decided in 2017 and, as McKnight has argued on appeal, it has no relevance to the legal analysis of a motion for leave to file a new trial." The principal opinion thus concludes, "[f]or this reason alone," the matter must be remanded "to the trial court for the purposes of holding an evidentiary hearing."

{¶48} The principal opinion also provides that, because the record does not reveal "what efforts were made to interview the jury during the 14-day period following the verdict * * * and whether a court order barred juror interviews during that 14-day period," this gap requires reversal and remand. *Id.* at ¶ 15. Once again, however, appellant did not argue

that the trial court erred by failing to examine counsel's conduct during the 14 days, but instead argued that the no-impeachment rule would prevent the court from considering juror testimony to impeach the jury's verdict. Thus, the lack of evidence about the 14-day window should not require a reversal of the trial court's judgment. In fact, the trial court's July 3, 2019 order states that "no evidence would be submitted at the hearing" because appellant's counsel indicated that counsel "did not have additional information to submit" beyond that contained in appellant's motion and reply memorandum. Because appellant informed the trial court that he had no evidence to present, an evidentiary hearing would be pointless. Therefore (1) counsel made a strategic decision to raise the precise argument that counsel did, in fact, raise, and (2) the trial court limited its review to the issues and arguments that the parties actually presented.

{¶49} Although the principal opinion also states that the trial court was "preoccup[ied] with the *Pena-Rodriguez* decision," instead it appears that the trial court squarely addressed (1) appellant's argument that *Pena-Rodriguez* now allows him to seek leave to file a new trial motion based upon juror misconduct, and (2) appellee's argument that *Pena-Rodriguez* should not apply retroactively to a case that became final years ago. Thus, it is understandable why the trial court cited *Pena-Rodriguez* and decided the motion based upon the precise arguments the parties actually presented. Although the principal opinion directs the trial court to consider appellant's motion for leave without regard to *Pena-Rodriguez,* appellant did not present his arguments to the trial court in the vacuum that the principal opinion now directs.

{¶50} Generally, appellate courts presume that trial courts correctly apply the law. *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). Here, however, the principal

opinion appears to presume that the trial court incorrectly applied the law based upon (1) the two aforementioned sentences in the trial court's decision, and (2) the fact that the trial court's decision did not explicitly mention the 14-day window.  However, in view of the fact that both parties cited the applicable legal standard, the omission in the decision of an explicit discussion about the 14-day window should not result in the conclusion that the trial court failed to apply the correct legal standard.  Appellant did not assert that he could not have spoken with the jurors within the prescribed time period, nor did he present evidence to that effect.  Instead, appellant argued that until *Pena-Rodriguez* in 2017, Evid.R. 606(B), in conjunction with Crim.R. 33(C), prevented him from filing a new trial motion on the basis of juror racist animus.

**{¶51}** Appellate courts are also generally unwilling to conclude that a trial court errs " 'by failing to consider arguments that were never presented to it.' "  *State v. Barnes*, 8th Dist. Cuyahoga No. 109442, 2021-Ohio-842, 2021 WL 1054499, ¶ 43, *accord In re F.B.*, 9th Dist. Summit No. 28960, 2019-Ohio-1738, 2019 WL 2041407, ¶ 27 ("This Court will not fault the trial court for failing to address a legal argument that was not raised or for failing to consider evidence that was not presented.")  Similarly, appellate courts will ordinarily not consider arguments that parties did not raise on appeal.  *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir.2013); *In re Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19 ("While there may be exceptions, it is not generally the proper role of this court to develop a party's arguments.").

**{¶52}** I additionally note that appellant asserts that he "has known all along * * * that [he] was convicted and sentenced to death because he is a Black man and not because of the evidence at trial," yet he presented no evidence that he attempted to speak

with jurors after the verdict to ascertain whether jurors made racist comments.  *See State v. Lenoir*, 2nd Dist. Montgomery No. 26080, 2015–Ohio–1045, 2015 WL 1278205, ¶ 22 (pointing out that if the defendant believed that his friend "had given false testimony, he could have promptly contacted [his friend] and made the appropriate inquiries at any time after his trial").  Although appellant did not claim that counsel could not have spoken to the jury, he instead asserted that federal court decisions denied his request to depose jurors.  However, asking a court for permission to depose jurors or informally asking jurors questions are two different concepts.  Thus, I believe appellant's contention that the *aliunde* rule prevented him from obtaining juror affidavits misses the mark.  The *aliunde* rule, with limited exceptions, prohibits courts from considering juror testimony to impeach a verdict.  Specifically, Ohio Evid.R. 606(B) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented.  However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court.  His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.

**{¶53}** This rule prohibits a court from considering a juror's statement unless evidence *aliunde* exists; that is, evidence extraneous and independent, based upon the firsthand knowledge of one who is not a juror.  *State v. Hessler*, 90 Ohio St.3d 108, 123, 734 N.E.2d 1237 (2000).  "The purpose of the *aliunde* rule is to maintain the sanctity of the jury room and the deliberations therein, ensure the finality of jury verdicts, and protect

jurors from being harassed by defeated parties." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 296, cert. denied, 207 L.Ed.2d 1073, 2020 WL 3146847 (June 15, 2020), citing *State v. Hessler*, 90 Ohio St.3d 108, 123, 734 N.E.2d 1237 (2000); *accord McDonald v. Pless*, 238 U.S. 264, 269, 35 S.Ct. 783, 59 L.Ed 1300 (1915) (inquiries into jury deliberations may occur only in "gravest and most important cases").

**{¶54}** In the case sub judice, I agree with the trial court's conclusion that appellant had not been unavoidably prevented from timely filing his new trial motion. Contrary to appellant's assertion, the *aliunde* rule did not prevent appellant from speaking with jurors or requesting affidavits. Although *Pena-Rodriguez* now permits courts to consider juror testimony concerning racial bias exhibited during deliberations, *Pena-Rodriguez* did not announce a new rule to allow defendants to interview jurors or request juror affidavits. A difference exists between asking a court to depose jurors and informally asking jurors to speak. Evid.R. 606(B) does not prevent parties from interviewing jurors and asking jurors to submit affidavits, although the rule does prevent a court from considering such evidence unless an exception applies. *State v. Robb*, 88 Ohio St.3d 59, 79, 723 N.E.2d 1019, 1043, 2000 WL 107149 (2000). Although *Robb* held that a court could not consider a juror affidavit, it did not state that Evid.R. 606(B) prohibits a defendant from speaking to a juror, or from an attempt to introduce an affidavit to support a new trial motion. Therefore, while *Pena-Rodriguez* may have created a new exception to Evid.R. 606(B), it did not create a new procedural mechanism to allow defendants to challenge convictions that have long since been final. Although appellant argues that the trial court could not consider juror affidavits concerning juror racial bias, like the defendant in *Pena-Rodriguez*, appellant in the case at bar could have sought to change the law through an

appeal to the Ohio Supreme Court or the United States Supreme Court. Here, appellant's conviction became final in 2006, after he exhausted his direct appeals. Thus, a question should exist as to whether appellant can invoke a newly-recognized rule to allow the trial court to consider juror affidavits to support his new trial motion. Once again, appellant's motion for a new trial came 17 years after his trial and 13 years after his conviction had become "final" when he had exhausted his direct appeal rights.

**{¶55}** Many courts have also recognized that a change in law will not generally entitle a defendant to a new trial. In *United States v. Shelton*, 459 F.2d 1005, 1006–1007 (9th Cir.1972), the court held that a change in the legal standard to determine insanity did not amount to "newly discovered evidence" for purposes of Fed.R. App.P. 33. *See United States v. King*, 735 F.3d 1098, 1108–1109 (9th Cir.2013) (reaffirming *Shelton*). In another case, a ruling regarding the warrant requirement after a defendant's trial did not provide the defendant with grounds to seek a new trial. *State v. Parsons*, 3rd Dist. Henry No. 7-18-29, 2019-Ohio-824, 2019 WL 1109898, ¶¶ 6-8, appeal not allowed, 156 Ohio St.3d 1453, 2019-Ohio-2780, 125 N.E.3d 936. In general, a ruling issued after trial cannot form the basis of a claim that an error of law occurred at trial. *Id.* at ¶ 8.

**{¶56}** Moreover, many questions exist whether a change to the no-impeachment rule should permit a defendant to seek a new trial 17 years after conviction. The United States Supreme Court has recognized the danger of new trials long after conviction, including lost witnesses, forgotten memories, misplaced evidence, and deteriorated physical evidence. *See Weaver v. Massachusetts*, — U.S. —, 137 S.Ct. 1899, 1912, 198 L.Ed.2d 420 (2017). Applying a new rule of law to a new trial motion after a conviction became final years ago could result in "[m]any final convictions * * * be[ing] vacated, with

retrial 'hampered by problems of lost evidence, faulty memory, and missing witnesses.'" *Allen v. Hardy*, 478 U.S. 255, 260–61, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986), quoting *Solem v. Stumes*, 465 U.S. 638, 650, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984. Thus, unless an exception applies, new judicial rulings and "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules [or ruling] are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989); *Ali v. State*, 104 Ohio St.3d 328, 2004-Ohio-6592, 819 N.E.2d 687. A case becomes "final" when " 'the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed.' " *Teague* at 295, quoting *Linkletter v. Walker*, 381 U.S. 618, 622, 85 S.Ct. 1731, 1734, 14 L.Ed.2d 601 (1965); *see also Beard v. Banks*, 542 U.S. 406, 411, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004), quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) ("[s]tate convictions are final for purposes of retroactivity analysis when direct appeal has been exhausted and time for filing petition for a writ of certiorari has elapsed or been denied); *State v. Ketterer*, 140 Ohio St.3d 400, 2014-Ohio-3973, 18 N.E.3d 1199, ¶ 13 (conviction final when accused exhausted all appellate remedies).

{¶57} However, the United States Supreme Court has also emphasized that newly-recognized "watershed rules" of criminal procedure that " 'implicat[e] the fundamental fairness [and accuracy] of the trial' " may indeed apply to cases that have become final. *Ramos v. Louisiana*, — U.S. —, 140 S.Ct. 1390, 1407, 206 L.Ed.2d 583 (2020), quoting *Teague v. Lane*, 489 U.S. 288, 312, 109 S.Ct. 1060, 1077, 103 L.Ed.2d 334 (1989). "But, * * * [this] test is a demanding one, so much so that th[e Supreme]

Court has yet to announce a new rule of criminal procedure capable of meeting it." *Id.* *Ramos* explained that the "test is demanding by design, expressly calibrated to address the reliance interests States have in the finality of their criminal judgments." *Id.* *See generally Rouse v. United States,* U.S. Dist. Court, South Dakota, Southern District No. CIV 06-4008, 2020 WL 1287986, *10 (Mar. 18, 2020) ("*Pena-Rodriguez* does not qualify as extraordinary circumstance that entitles Petitioners to new trial or to interview jurors").

**{¶58}** I also acknowledge that certain errors are so severe that the error must be deemed to be a structural error, and require reversal due to fundamental unfairness and the undermining of the requirements of a fair judicial process. Indeed, racial bias exhibited during jury deliberations may constitute structural error. *See generally Warger v. Shauers,* 574 U.S. 40, 135 S. Ct. 521, 529 n.3, 190 L. Ed. 2d 422 (2014), quoting *McCleskey v. Kemp,* 481 U.S. 279, 310, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), quoting *Strauder v. West Virginia*, 100 U.S. 303, 309, 25 L. Ed. 664 (1880) (a fair trial before an impartial jury " 'is a criminal defendant's fundamental "protection of life and liberty against race or color prejudice" ' "). However, most structural error cases are considered on direct appeal, not through a new trial motion years after conviction. *See Weaver,* 137 S.Ct. at 1911-1912 (structural error cases all reversed upon direct appeal). Thus, a question exists whether the structural error doctrine could apply under the circumstances present in the case sub judice.

**{¶59}** Once again, in the case at bar appellant did not (1) assert that counsel lacked the ability to speak with jurors after the verdict, or (2) cite any rule or procedure that prevented counsel from speaking with the jurors after the verdict. Even if courts could not consider juror affidavits that attested to racial bias during deliberations, appellant

nevertheless had the means to speak with jurors, and, like the defendant in *Pena-Rodriguez*, the ability to convince the Ohio or the United States Supreme Court to change the law to create an exception to the no-impeachment rule. Appellant, however, did not proceed in this manner.

#### Conclusion

{¶60} In the case sub judice, appellant had the burden to produce clear and convincing evidence to show he was unavoidably prevented from filing a new trial motion within the prescribed time period. Appellant, however, did not establish that he could not discover a juror's racially charged statements within 14 days of the verdict. Instead, appellant argued that juror affidavits would have been deemed inadmissible until *Pena Rodriguez* in 2017. In view of the fact that the trial court focused on the actual arguments that the parties raised, I find nothing in the record to overcome the presumption that the trial court correctly applied the law and properly overruled appellant's motion without holding an evidentiary hearing. Thus, I believe that this court should affirm the trial court's judgment. A reversal of this judgment will simply result in further delay in considering the merits of appellant's claim.

{¶61} My dissent, however, is certainly not intended to minimize the seriousness of the allegations raised in the jurors' affidavits, or be construed as indifference or insensitivity to the plight of any wrongfully convicted defendant. Any form of racial bias in the administration of justice is abhorrent and intolerable and has no place in our judicial system. No person should be convicted of a crime or suffer a sentence because of that person's race. I also recognize that in our country some individuals have been wrongly convicted and incarcerated. For example, The Innocence Project has secured

approximately 200 DNA-based exonerations since its 1992 founding. Obviously, our common goal should be to ensure that all criminal convictions are based upon proper, admissible evidence adduced during fair and impartial trials, not based on a defendant's race, age, ethnic heritage, religious affiliation or any factor unrelated to actual evidence of criminal conduct.

**{¶62}** I agree with the *Pena-Rodriguez* court that our "Nation must continue to make strides to overcome race-based discrimination" and "blatant racial prejudice is antithetical to the functioning of the jury system and must be confronted." *Pena-Rodriguez*, 137 S.Ct. at 871. The notion that race should play any role in a jury's decision contravenes all social, ethical, and legal mores and is improper and unacceptable. However, at this juncture I do not believe that Ohio law permits appellant to invoke this newly-recognized exception to the no-impeachment rule to seek a new trial 17 years after conviction, and 13 years after his conviction became "final." Consequently, I do not believe the trial court's denial of appellant's motion constitutes an abuse of discretion.

**{¶63}** The Supreme Court also emphasized in *Pena-Rodriguez* that not every comment that may indicate hostility or bias will justify disregarding the no-impeachment bar, but that racial animus must have been a significant motivating factor in a conviction. I note that the paucity of evidence in *Pena-Rodriguez* stands in stark contrast with the substantial amount of evidence adduced in the case at bar. In *Pena-Rodriguez* the evidence consisted solely of the victim's testimony, but in the case at bar a raft of physical evidence connected appellant to the murder victims. Moreover, the two jurors who provided affidavits concerning another juror's racially charged comments did not state in their affidavits that their vote for guilt stemmed from their own racial animus, or from

another juror's comments, pressure, coercion or duress.  Once again, as *Pena Rodriguez* provides, not every comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further inquiry.  *Pena Rodriguez*, 137 S.Ct. At 869.

**{¶64}**  Therefore, in view of the foregoing, I believe that this court should affirm the trial court's judgment.  I recognize that *Pena-Rodriguez* has now created a mechanism to open the door to the jury room to determine whether juror racial bias cast doubt on a jury's fairness and impartiality.   However, because intermediate appellate courts must follow Ohio Supreme Court precedent, this Court could not simply disregard long standing rules and Ohio Supreme Court decisions.  The Supreme Court declined, however, to define the mechanics involved in this process, and deferred to state rules and local rules to shape the procedure and balance the competing interest of finality of judgments.  Thus, I would have encouraged the Ohio Supreme Court to conduct further review and, in light of *Pena-Rodriguez*, develop a framework and appropriate standard for Ohio courts to use to evaluate cases in which racial animus may have played a role.

**{¶65}**  Accordingly, based on the foregoing reasons, because I believe this court should affirm the trial court's judgment, I respectfully dissent.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED, CAUSE REMANDED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Wilkin, J.: Concurs in Judgment and Opinion.
Abele, J.: Dissents with Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**